# UNION PACIFIC RAILWAY COMPANY *v.* UNITED STATES.

# UNITED STATES *v.* UNION PACIFIC RAILWAY COMPANY.

### APPEALS FROM THE COURT OF CLAIMS.

Argued January 26, 1886.—Decided March 29, 1886.

Section 6 of the act of July 1, 1862, in aid of the construction of the railroads to the Pacific, required them to transport mails, troops, supplies, etc., for the government "at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same service." The Union Pacific Railway Company filed its petition in the Court of Claims, setting forth the performance of such services for the government and its charges for the same, and averring that the several amounts were according to rates fixed by it both as respects the government and the public, which were fair and reasonable, and not exceeding the amounts paid by private parties for the same kind of service. The government denied the reasonableness of the rates, and averred that less amounts allowed by it were fair and reasonable. The Court of Claims, after hearing proof, found "that the amounts allowed and retained by the Treasury Department for transportation of mails as aforesaid, are a fair and reasonable compensation for the service and not in excess of the rates paid by private parties for the same service." *Held :* That this was a proper form of finding.

The provisions of § 6 of the act of July 1, 1862, respecting rates for transportation done by the Union Pacific Railway Company for the United States, govern such transportation over its bridge between Council Bluffs and Omaha.

The service rendered by a railway company in transporting a local passenger from one point on its line to another is not identical with the service rendered in transporting a through passenger over the same rails.

The findings in this case were before the court on a motion for a certiorari, reported in 116 U. S. 402. After that motion was denied the cause came on for hearing and decision on the merits. The case is stated in the opinion of the court.

*Mr. John F. Dillon* for The Union Pacific Railway Company.

*Mr. Solicitor General* for the United States.

· MR. JUSTICE MATTHEWS delivered the opinion of the court.

In the case of *Union Pacific Railroad Company v. United States*, 104 U. S. 662, on appeal from the Court of Claims, it was decided that the railroad company, by virtue of the sixth section of the act of July 1, 1862, ch. 120, 12 Stat. 489, 493, was entitled to be paid by the government for services rendered in the transportation of the mails over its road, and of the employés accompanying them, compensation at fair and reasonable rates, not to exceed the amounts paid by private parties for the same kind of service, and not such rates as were or might be prescribed by general laws regulating the compensation for similar service by other railway companies; and for the purpose of ascertaining and awarding the amount due for such services as had been rendered, and for which the suit had been brought, the judgment was reversed and the cause remanded to the Court of Claims.

In that court the cause was consolidated with two others between the same parties, having similar objects, and an amended petition was substituted, in which The Union Pacific Railway Company was plaintiff, that being the name of the consolidated corporation composed of The Union Pacific Railroad Company, The Kansas Pacific Railway Company, and The Denver Pacific Railway and Telegraph Company. In that petition the plaintiff alleged claims against the government for compensation for transportation of troops, mails, munitions of war, supplies, public stores, passengers, mail agents and clerks, and the transmission of dispatches, the details of which were set out in schedules attached thereto. Of these the sum of $3,768,568.60 was alleged to have accrued for services rendered by the Union Pacific Railroad Company prior and up to June 30, 1878, one half of which, it was admitted, should be retained by the government and applied, as required by section 5 of the act of July 2, 1864, to the payment of the

bonds issued by the United States in aid of the construction of the road; an additional sum of $1,415,415.25 was claimed to be due and payable in cash, for services rendered by the Kansas Pacific Railway Company for similar services, and the further sum of $94,206.20 for like services rendered by the Denver Pacific Railway and Telegraph Company.

It was also averred that the several amounts charged for the services so performed were according to the rates therefor which the railroad company had determined and fixed, both as respects the government and the public, and of which the government and the several departments were duly notified, which rates were fair and reasonable, and not exceeding the amounts paid by private parties for the same kind of service.

The United States filed an answer to this complaint denying generally all its allegations, and with it a counter claim for the recovery of the sum of $11,500,000, alleged to be due, as follows: $1,000,000, being five per centum on the net earnings of the Kansas Pacific Railway Company on the subsidized portion of its road from November 2, 1868, to December 31, 1882; $1,500,000, being five per centum of the net earnings of the Union Pacific Railroad Company from November 6, 1875, to June 30, 1878; and $9,000,000, as being twenty-five per centum of the gross earnings of the Union Pacific Railroad Company from June 30, 1878, to December 31, 1882, after deducting the necessary expenses actually paid within the year in operating and keeping the same in a state of repair, and also the sum paid within the year in discharge of interest on the first mortgage bonds.

To this counter claim the plaintiff answered, in substance, that the twenty-five per centum of the earnings referred to were required by law to be paid into a sinking fund for the benefit of the plaintiff, and to be used in liquidation of its obligations; that the amount so to be paid is such a sum, not exceeding the sum of $850,000 in any one year, as, added to the amount earned by the company for transportation for the defendants, will amount to twenty-five per centum of the net earnings of said company, no money being required to be paid into said sinking fund unless the compensation for transporta-

tion shall not equal twenty-five per centum of said net earnings; that during the period mentioned in the counter claim, to wit, from June 30, 1878, to December 31, 1882, the United States became and is still indebted to the plaintiff, on transportation account, in the sum of $7,158,166.06, as shown in schedules exhibited, one-half of which amount, $3,579,083.03, is applicable to bond and interest account, and the other half to the sinking fund account, which said last mentioned sum is equal to and a full satisfaction of all the demands of the defendant and of the obligation of the plaintiff to pay the said twenty-five per centum of its net earnings during the said period.

On these issues the Court of Claims ascertained from the evidence the facts in dispute, which are set forth in special findings, and on these findings its conclusions of law, that the plaintiff is entitled to be paid, on account of the matters set forth in the claim, the sum of $2,910,124.08; that the defendants, on account of the counter claim, are entitled to be paid the sum of $4,487,807.39; and that the United States are consequently entitled to judgment for the difference, amounting to $1,577,683.31, and judgment was so entered.

The United States appealed from so much of this judgment as allowed to the plaintiff the sum of $2,910,124.08 on its claim.

The plaintiff appealed from the whole judgment.

And the case is now here for determination on these cross-appeals.

The only question of law made upon its appeal by the plaintiff below is, that the Court of Claims failed in its finding of facts as to compensation claimed for transportation of the mails to meet the actual issue made by the pleadings. This issue, it is said, was an affirmation on the part of the plaintiff, and a denial on the part of the defendant, that the rates of transportation fixed and determined by the railway company, of which notice had been given to the proper department of the government, were fair and reasonable, and not in excess of what was paid by private parties for the same kind of service; whereas the finding of fact by the Court of Claims was, "that

the amounts allowed and retained by the Treasury Department for transportation of mails, as aforesaid, are a fair and reasonable compensation for the service, and not in excess of the rates paid by private parties for the same kind of service." A distinction is thus sought to be made between a *quantum meruit*, ascertained according to the rate prescribed by the act, and rates determined and fixed in the first instance by the railway company, not to be disturbed if they are found not to be in excess of the limit prescribed by the statute.

But, as it seems to us, this is a distinction without a difference. It is quite immaterial whether the amount actually found to be due for transportation of the mails, " at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of service;" as required by the sixth section of the act of July 1, 1862, is ascertained upon evidence comparing them with the rates previously determined and fixed by the company, or with those allowed by the accounting officers of the Government. The only material thing is to adjudge what is due according to the rule prescribed by the statute. That the Court of Claims has done. In doing so, it has virtually decided the point of the issue; for if the company has charged rates producing a different amount, they are thereby declared not to be fair and reasonable, because whatever differs from the amount found by the court to answer this description cannot be supposed to fulfil it. There cannot be two differing rates for such compensation which will both correspond with the conditions prescribed by the act of Congress.

We come now to consider the appeal of the United States.

The first question arising upon this appeal relates to the charges which may be lawfully made to the Government for transportation services over the bridge of the Union Pacific Railway Company between Council Bluffs and Omaha. On this subject, the finding of the Court of Claims is as follows:

"The company's uniform rate, during the time covered by this suit, for the transportation of passengers between Council Bluffs and Omaha, over its bridge and approaches, a distance of 3.97 miles, was 50 cents each, which sum was included in the price

of. tickets sold for longer or shorter distances. That was a fair and reasonable rate of compensation to be paid by the defendants, and not in excess of the rates paid by private parties for the same kind of service.

" The Treasury Department did not allow 50 cents for each passenger so transported for the defendants, but in each case, ascertaining over what railroad or public highway the passenger reached Council Bluffs or Omaha, and the rate per mile paid by him over such part of said railroad or public highway as he had thus travelled, the company was allowed only the same rate per mile for transporting such passenger between Council Bluffs and Omaha as he had so paid on the road leading to the bridge. On the roads leading to said bridge the rates per mile are different, and the rates on the same road differ according to distance travelled.

" The difference between the amount so allowed by the Treasury Department for the transportation of such passengers for the defendants and that which the company should be allowed if it has a right to charge 50 cents for each passenger so transported during the time above specified, is $3693.31.

" Similar rules were applied by the Treasury Department to the transportation of freight over said bridge, and the disallowance resulting therefrom amounted to $10,885.34. The rate claimed by the company for transportation of freight over said bridge was fair and reasonable, and not in excess of the rates paid by private parties for the same kind of service."

The contention of the Government in support of the allowances made by the Treasury Department, thus adjudged to be insufficient, is based on the act of February 24, 1871, ch. 67, 16 Stat. 430, under which it is claimed the bridge was built, which provides that—

"Said bridge may be so constructed as to provide for the passage of ordinary vehicles of travel, and said company may levy and collect tolls and charges for the use of the same ; and for the use and protection of said bridge and property the Union Pacific Railway Company shall be empowered, governed, and limited by the provisions of the act entitled 'An Act to authorize the construction of certain bridges and to establish

them as post roads,' approved July twenty-five, eighteen hundred and sixty-six, so far as the same is applicable thereto."

The act thus referred to is chapter 246 of 1866, 14 Stat. 244, of which section 3 is as follows:

"Any bridge constructed under this act, and according to its limitation, shall be a lawful structure, and shall be recognized and known as a post-route, upon which, also, no higher charge shall be made for the transportation over the same of the mails, the troops, and the munitions of war of the United States, than the rate per mile paid for the transportation over the railroads or public highways leading to the said bridge."

It is argued that this limitation, made by reference a part of the act of 1871, applies to charges to be made by the Union Pacific Railway Company for transportation over the bridge, considered as part of its railway line, and supersedes the legislative contract contained in section six of the act of July 1, 1862, whereby it was authorized to receive compensation at fair and reasonable rates, not in excess of those charged to private parties for similar service.

The Court of Claims held otherwise, and we think rightly. The Omaha bridge of the Union Pacific Railway Company was not constructed under the act of 1866. It was constructed under the original acts incorporating the company—the acts of July 1, 1862, and of July 2, 1864, and the act of February 24, 1871; and the reference in the last-named act to the act of 1866 was for the purpose of extending the provisions of the latter, so far as necessary to confer additional powers upon the railway company for the use and protection of the bridge, and contains no evidence of any intent on the part of Congress to change the rule as to rates of transportation over the line of the railway company as prescribed by section six of the act of July 1, 1862. In the case of the *Union Pacific Railroad Company* v. *Hall*, 91 U. S. 343, it was decided that the bridge in question became part of the railroad of the company, and that the company was bound to run and operate its whole road, including the bridge, as one connected and continuous line. The bridge, therefore, as part of the railroad, became subject to the provisions of the act of July 1, 1862, as to the rates to be paid

by the Government for transportation service over it, and there is nothing in the act of 1871 that changes the application of the rule fixing these rates.

The next question arising on the appeal of the United States relates to items charged for the transportation of passengers, on account of the Government, travelling between Council Bluffs and Ogden.

The finding of facts on the subject by the Court of Claims is as follows:

"The company's uniform rate for the transportation of passengers between Council Bluffs and Ogden, when said passengers purchase tickets at either of those places, is $78.50 each; but, by contracts with connecting railroad companies, the claimant receives from said companies who sell through tickets at reduced rates from New York, San Francisco, and other places over their own and the claimant's road, $54 only for each passenger carried between said Council Bluffs and Ogden upon said through tickets, as its proportion of money paid for the whole through distance.

"In computing the compensation set out in Finding IX. the Treasury Department allowed the claimant only $54 for each passenger carried for the defendants, when said passenger did not have a through ticket over its own and other roads, but took the train at Council Bluffs or Ogden upon an order from the defendants' authorized officers to proceed over the road between those places at the charge of the Government.

"The difference between $54 allowed as aforesaid and $78.50 claimed by the company for each passenger so transported by the claimant, is $2855.38 for the period covered by this suit.

"The court finds that $78.50 is a fair and reasonable rate of compensation to be paid by the defendants for the transportation of a passenger taking a train at Ogden or Council Bluffs and passing over the road between those places, without a through ticket purchased of other roads as aforesaid, and not in excess of the rates charged private parties for the same kind of service.

"In some instances the requisition for transportation presented to the agents of the company stated on its face that the

passenger was bound from seaboard to seaboard, and in others the requisition furnished no information on the subject.

"How much of the sum disallowed was for one and how much for the other kind of requisition is not shown, but the company concedes the reduction in the former cases."

The contention on the part of the United States is, that local passengers carried on its account between Council Bluffs and Ogden, shall be carried at the same rates as are charged for through passengers passing between those points, as part of a journey over the whole line, although a difference is made in respect to all other persons. But the Court of Claims has found as a fact that the amount found by it is based on rates between those points which are fair and reasonable, and not in excess of those charged to private persons for the same service. We cannot review this finding of fact, and no question of law arises upon it, unless it be one, whether the service rendered in transporting a local passenger between the two points is in law identical with that rendered in transporting a through passenger between the same points as part of the transit over the distance of the whole line. This we cannot affirm.

As the United States did not appeal from that part of the judgment of the Court of Claims finding the amount due on account of the counter claim, no question arises thereon.

We find no error in the judgment, and it is accordingly

*Affirmed.*