## *Ex parte* KOEHLER.

### (*Circuit Court, D. Oregon.* July 4, 1887.)

1. CARRIERS — INTERSTATE COMMERCE ACT — LONG AND SHORT HAUL — COMPETITION.

   The fact that there is competition in the carriage of persons or property to or from a particular place is a circumstance that justifies a common carrier, under section 4 of the interstate commerce act, to charge less for a long haul to or from said place than a short one included therein.

2. SAME — PASSES TO FAMILIES OF EMPLOYES.

   Section 2 of the interstate commerce act in effect prohibits the giving of passes or free carriage to particular persons, and the exception allowed in section 22, in favor of officers and employes of the road, does not include the families of such persons.

(*Syllabus by the Court.*)

Petition for Instruction.
*John W. Whalley,* for petitioner.

DEADY, J. On June 25, 1887, the receiver of the Oregon & California Railway Company filed his petition in this court, asking for direction touching certain questions arising in the management of the road under the interstate commerce act. The road is 400 miles in length, and lies wholly in this state, between Portland and the southern boundary thereof; and since January 19, 1885, it has been operated by the petitioner, as receiver of this court.

It appears from the petition that the Oregon & California road will soon be connected with the California & Oregon road, when the two will form a through line between Portland and San Francisco; that between these points there is also water communication by steamers and sail-vessels, that carry passengers and freight at less than the average cost of transportation by rail between said places and all intervening stations; that the road of the Oregon Pacific Railway Company runs from Yaquina bay to Albany, in this state, and there crosses the line of the Oregon & California road, from whence it is being constructed to the eastward;

that with the aid of steam-boats on the Wallamet river it receives a portion of the freight which would otherwise be carried on the Oregon & California road; that the bulk of the freight obtained by the Oregon Pacific Railway Company from the Wallamet valley is carried to Yaquina' bay, and thence to San Francisco, at special rates, on the steamers of the Oregon Development Company, which are apparently under the same control as the Oregon Pacific road; that the Canadian Pacific road connects with a line of steamers running between its western terminus and San Francisco; and that to compete with such all water and rail and water transportation between Portland and points to the north and east of it, and in the Wallamet valley on the one hand, and San Francisco on the other, it is necessary to make corresponding rates on the Oregon & California road.

The petitioner also states that it will be necessary for him, under section 6 of the interstate commerce act, in conjunction with those in control of the connecting lines, to make the rates between Portland and San Francisco; and in view of these general statements, and many illustrative details contained in the petition, he asks (1) whether, under the interstate commerce act, such rates can be made, for through travel and traffic, as will enable the Oregon & California road to compete for the same, at points where competition by water or rail exists, although the rates for the long haul between Portland and San Francisco or intervening points may be less than those for a shorter haul in the same direction between said places or such points; and (2) whether, in conjunction with the Northern Pacific Railway Company or other transportation lines, the Oregon & California road may meet the competition of the Canadian Pacific°road, or other transportation lines, on transcontinental business originating to the north and east of Portland, although its share of the through rate may be less than the local charges over the road, or its share of the through rate on competitive business between Portland and San Francisco.

The petitioner also states that it has been customary to issue passes to the families of employes of the road, as well as the employes themselves,' and that the same have been regarded as a part of the consideration for the services of the latter; and asks whether, under section 22 of the interstate commerce act, he can issue such passes over the Oregon & California road, to be used on interstate travel; and whether he can interchange the same for the passes of other roads, to be used in such travel by the families of the employes of such other roads.

The interstate commerce act applies, by its own terms, "to any common carrier engaged in the transportation of passengers or property wholly by railroad, or partly by railroad and partly by water, when both are used under a common control, management, or arrangement for a continuous carriage or shipment" not "wholly within one state;" and all charges for any such service "shall be reasonable and just." Section 4 of the act provides "that it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passen-

gers, or of like kind of property, *under substantially similar circumstances and conditions,* for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier, within the terms of this act, to charge and receive as great compensation for a shorter as for a longer distance."

From *Ex parte Koehler,* 23 Fed. Rep. 529, it appears that the Oregon & California Company was formed under the general incorporation act (1862) of Oregon, passed in pursuance of section 2 of article 9 of the constitution of the state, which provides for the formation of corporations under general laws only, and reserves to the legislature the power to alter, amend, or repeal any act passed in pursuance thereof, "but not so as to impair or destroy any vested corporate right;" and section 36 of this corporation act provides that a railway corporation formed thereunder "shall be deemed a common carrier, and shall have power to collect and receive such tolls or freights, for transportation of persons or property thereon, as it may prescribe." Gen. Laws Or. 532.

From these premises I concluded in that case that this corporation has a vested right to collect and receive a reasonable compensation for the transportation of persons and property over its road which the legislature cannot impair or destroy; and that, while the legislature may prescribe rates of transportation which will be presumed reasonable until the contrary appears, the judiciary are the final judges of what is reasonable or not, or what "impairs" the vested right of the corporation to have a reasonable compensation for its services. Following this conclusion, I held in the same case that, notwithstanding the act of the Oregon legislature (Sess. Laws 1885, p. 39) called the "Hoult Act," prohibiting the corporation from charging a greater rate for carrying similar property for a short haul than a long one, in the same direction, the Oregon & California road might, for the purpose of retaining and securing business, at a point or place where there are competing lines of transportation, charge less for a long haul than a short one, in the same direction, so long as the charge for the latter is reasonable. In the course of the opinion it was said:

"I assume that the state has the power to prevent a railway company from discriminating between persons and places for the sake of putting one up or another down, or any other reason than the real exigencies of its business. Such discrimination, it seems to me, is a wanton injustice, and may therefore be prohibited. It violates the fundamental maxim, *sic utere tuo ut alienum non lædas,* which in effect forbids any one to so use his property as to injure another. * * * But where the discrimination is between places only, and it is the result of competition with other lines or means of transportation, the case, I think, is different. For instance, the act prescribes a reasonable rate for carrying freight between Corvallis and Portland, or from either to points intermediate thereto. But Corvallis is on the river, and has the advantage of water transportation for some months in the year. The carriage of goods by water usually costs less than by land, and, as water-craft are allowed to carry at a rate less than the maximum fixed for the railway, they will get all the freight from this point unless the latter is allowed to compete for it. But if to do this it must adopt the water rate for all the points inter-

mediate between Portland and Corvallis, where there is no such competition, it is, in effect, required to carry freight to and from such points at a less rate than that which the legislature has declared to be reasonable, or else give up the business at Corvallis altogether. If the legislature cannot require a railway corporation, formed under the law of the state, to carry freight for nothing, or at any less rate than a reasonable one, then it necessarily follows that this provision of the act cannot be enforced, so far as to prevent the railway from competing with the water-craft at Corvallis and other similarly situated points, even if in so doing they are compelled to charge less for a long haul than a short one in the same direction. It is not the fault or contrivance of the railway company that compels this discrimination. It is the necessary result of circumstances altogether beyond its control. It is not done wantonly, for the purpose of putting the one place up or the other down, but only to maintain its business against rival and competing lines of transportation. In other words, the matter, so far as the railway is concerned, resolves itself into a choice of evils. It must either compete with the boats during the season of water transportation, and carry freight below what the legislature has declared to be a reasonable rate, or abandon the field, and let its road go to rust. Nor can the shipper at the non-competing point, or over the short haul, complain, so long as his goods are carried at a reasonable rate. It is not the fault of the railway that the shipper who does business at a competing point has the advantage of him. It is a natural advantage to which he must submit, unless the legislature will undertake to equalize the matter by prohibiting the carriage of goods by water for a less rate than by rail; and, when this is done, the inequalities of distance, as well as place, may also be overcome by requiring goods to pay the same rate over a short haul as a long one."

This opinion has been before the world for more than two years, and, on account of the importance of the subject, has attracted some attention, but, so far as I am aware, it has received no unfavorable criticism; and time and reflection have fully satisfied me of the correctness of the ruling.

In *Ex parte Koehler*, 25 Fed. Rep. 73, I had occasion to consider this subject again, on account of the competition at Corvallis with the Oregon Pacific Railway Company, running in connection with the steamers of the Oregon Development Company, for freight destined to and from San Francisco, in which the receiver was instructed to make rates that would enable the Oregon & California road to compete for freight with the Oregon Pacific Company at Corvallis. At common law a carrier has a right to charge less for a long haul than a short one in the same direction, but the rate for the short haul must be reasonable.

In *Atchison, T. & S. F. Ry.* v. *Denver & N. O. Ry.*, 110 U. S. 683, 4 Sup. Ct. Rep. 185, the supreme court held that the former could not be required to carry freight over its road from Kansas City to Pueblo, Colorado, for the latter, at the same rate it obtained on a division of through rates among combined companies, of which it was one, on a through line from Kansas to Denver, the latter being a competive point for the business to and from the Missouri river, while Pueblo is not, and this conclusion was reached notwithstanding the constitution of Colorado (section 6, art. 15) prescribes:

"All individuals, associations, and corporations shall have equal rights to have persons and property transported over any railroad in this state, and no undue or unreasonable discrimination shall be made in charges or facilities for transportation of freight or passengers within the state."

The judgment of the court is authority, then, for this proposition: Two or more corporations, in order to meet competition, may form a through line, and charge through rates for transportation thereon, which may be less than the sum of the local rates of the several roads constituting the line; and the portion of the through rate received by each corporation may be less than the local rate charged by said corporation for carrying freight over the whole length of its road.

The interstate commerce act is intended, among other things, to prevent discrimination between long and short hauls, except where they are made under substantially dissimilar circumstances and conditions. In my judgment, congress, in limiting the prohibition contained in section 4 of the act against discriminating charges between long and short hauls, to cases where such hauls are made " under substantially similar circumstances and conditions," has recognized the rule laid down in *Ex parte Koehler* as a proper one. Freight carried to or from a competitive point is always carried under " substantially *dis*similar circumstances and conditions" from that carried to or from non-competitive points. In the latter case the railway makes its own rates, and there is no good reason why it should be allowed to charge less for a long haul than a short one. When each haul is made from or to a non-competitive point, the effect of such discrimination is to build up one place at the expense of the other. Such action is willfully unjust, and has no justification or excuse in the exigencies or conditions of the business of the corporation. In the former case the circumstances are altogether different. The power of the corporation to make a rate is limited by the necessities of the situation. Competition controls the charge. It must take what it can get, or, as was said in *Ex parte Koehler*, " abandon the field, and let its road go to rust."

Competition may not be the only circumstance that makes the condition under which a long and a short haul are performed substantially dissimilar; but certainly it is the most obvious and effective one, and must have been in the contemplation of congress in the passage of the act. Section 6 of the act of July 1, 1862, (12 St. 489,) incorporating the Union Pacific, provides that the United States shall have the preference in the use of the road of the corporation, for the transportation of mails, troops, and munitions of war "at fair and reasonable rates of compensation, not to exceed the amount paid by private parties *for the same kind of service.*"

In *Union Pac. Ry. Co.* v. *U. S.*, 104 U. S. 662, and 117 U. S. 355, 6 Sup. Ct. Rep. 772, a question arose under this section as to what compensation the corporation was entitled to receive for transporting persons connected with the postal and military service of the government, over the line of its road, when it appeared from the finding of the court of claims that the uniform rate of the Union Pacific for carrying passengers over its road between Council Bluffs and Ogden, on tickets purchased at either of these points, was $78.50, but, by contract with connecting railway corporations, passengers were carried on through tickets from New York to San Francisco at reduced rates, of which the

Union Pacific received as its proportion, $54 a passenger.    117 U. S. 362, 6 Sup. Ct. Rep. 772.

As stated by the supreme court, (117 U. S. 363, 6 Sup. Ct. Rep. 776:)

"The contention of the United States is that local passengers carried on its account between Council Bluffs and Ogden shall be carried at the same rates as are charged for through passengers passing between these points, as part of a journey over a whole line, although a difference is made in respect to all other persons."

The question was decided in favor of the corporation, the court holding, in the language of the syllabus, (117 U. S. 355, 6 Sup. Ct. Rep. 772:)

"The service rendered by a railway company in transporting a local passenger from one point on its line to another is not identical with the service rendered in transporting a through passenger over the same rails."

The decisions of the supreme court in these two cases are quite recent, (1881, 1883, and 1885,) and were doubtless present in the mind of congress at the passage of the interstate commerce act.    In effect, they both hold that a short haul, without competition, is not "a like service," or a service performed under "similar circumstances and conditions," with a long one subject to competition, and that the circumstances in such case are so dissimilar as to warrant discrimination, or a less rate over the long haul than the short one.    Section 90 of the English railway act of 1845 (8 & 9 Vict. c. 20) requires equality of rates for the passage of goods "passing only over the same portion of the line of said railway, *under the same circumstances.*"

In *Denaby Main Colliery Co.* v. *Manchester, S. & L. Railway Co.*, 11 App. Cas. 97, 26 Amer. & Eng. R. Cas. 293, it was held, in an action against the defendant for overcharges, made in violation of the act, in carrying coals from a group of collieries situate at different points along the line of its road, at a uniform rate, that the act only applied to goods passing between the same *termini*, and over no other part of the line; and that inequality of rate, where unequal distances are traversed, does not constitute a preference contrary to the act.    In other words, the court held that two tons of coal, passing over the road of the defendant between B. and C., did not pass over such portion of its line "under the same circumstances," if one of them also passed over that portion of the road between A. and B., and therefore the defendant was not guilty of an infraction of the act when it charged no more for carrying a ton of coal from A. to the point C. than it did from B. to such point.

But, under the interstate commerce act, mere difference in distance is not such a circumstance as will justify a greater or even an equal charge for a short haul than a long one.    Yet congress must have contemplated that there might be such a difference in the circumstances attending a long and a short haul as would justify such charge,—as would make it necessary for a railway corporation, in the retention and acquisition of the business for which it is constructed and operated, to charge less for a long haul than a short one.    Congress never intended to make of this act a Procrustean bed, in which the conduct of the business of all the

roads engaged in interstate commerce shall be made to conform to one arbitrary rule, without reference to the probable and even unavoidable difference in the conditions and circumstances under which it must be transacted. And, as I have said, in my judgment, competition between the *termini* of a long haul is the most obvious and effective circumstance that justifies a railway in making a rate below what it might reasonably and does charge where there is no competition. The places between which competition in transportation exists between water-craft and railways, or even the latter, always will and must send and receive freight at lower rates than others not so favored. This is the result of natural advantage, supplemented often by exceptional sagacity and enterprise, and it would be folly in the legislature to prevent it if it could. As long as people and places differ so widely in capabilities and facilities, social or business equality is impossible. Society can do no more than to give each one an even chance and a fair show to make the most of his or its opportunities, and leave the result to circumstances over which it has little, if any, direct control.

The third question propounded by the receiver is easily answered. Section 2 of the act, by prohibiting any carrier subject thereto from charging any one person "a greater or less compensation for any service" rendered in the transportation of persons or property subject to the act than it does any other person for "a like and contemporary service," "under substantially similar circumstances and conditions," in effect prohibits the issuing of passes or the carrying of any person free of charge, so long as the same privilege is denied to any other person "under substantially similar circumstances and conditions." Now, it may be said, and with much plausibility, that the wife or minor child of an employe sustains a different relation to the employer from that of the public generally; and that, therefore, the carriage of such a person on a pass, or free of charge, is a service rendered by the carriers under "substantially dissimilar circumstances and conditions" from that rendered to any other person not belonging to the family of an employe.

But section 22 of the act contains some specific exceptions to the operation of section 2. Among them is this:

"Nothing in this act shall be construed to prevent railroads from giving free carriage to their own officers and employes, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employes."

The language of the exception is explicit. There is no room for interpretation or construction. The words cannot be made to include the "family" of an employe without violence to the apparent purpose of the legislature. In effect, the exception declares that the "circumstance" of a person being the employe of a railway corporation is sufficient to justify the latter in carrying him free of charge, but not his wife or children. The exception takes the subject of free carriage, on account of any person's employment by a railway corporation, out of the question of "similar circumstances and conditions," as provided in section 2, and declares that the person so employed may be carried on

that account, without reference to any other circumstance or condition, and by a necessary implication no one else. Doubtless it would be expedient to include the immediate family—the wife and minor children —of the employe in this exception. By this means the corporation might, without material cost to itself, or prejudice or injustice to any one, augment in a graceful way the compensation and convenience of faithful servants. But the remedy, if any, is with congress and not the courts.

The receiver is instructed that he is authorized to make a less rate for a long haul than a short one, in conjunction with connecting lines or otherwise, whenever, by reason of competition with other lines or means of transportation, the same is necessary to enable the Oregon & California road to retain or acquire business; and that he is not authorized to give passes over his road to any member of the family of an employe thereof, for the·purpose or in connection with interstate travel.