**In re Alvin L. HIGGINS, Sr., Debtor.**

**Alvin L. HIGGINS, Sr., Appellee,**

v.

**CLOSEOUT DISTRIBUTORS, INC., Appellant.**

**No. C–2–92–644.**

United States District Court, S.D. Ohio, E.D.

Aug. 13, 1993.

Laurence B. Landon, Columbus, OH, for appellee.

Douglas Stuart Roberts, Clark, Perdue & Roberts Co., Columbus, OH, for appellant.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

On July 5, 1991, Alvin L. Higgins, Sr., filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. In his petition, he listed Closeout Distributors as a creditor, noting that Closeout had obtained a judgment against him on April 25, 1991. He also listed his residence as an asset, and stated that it was encumbered by a first mortgage as well as Closeout's judgment lien. He claimed various exemptions available to him under Ohio law, including, pursuant to Ohio Revised Code § 2329.-66(A)(1), a $5,000 homestead exemption for his residence.

Higgins proposed to retain his home rather than have it sold through the bankruptcy proceedings. Under the Sixth Circuit's interpretation of § 2329.66(A)(1), as stated in *In re Dixon*, 885 F.2d 327 (1989), the Ohio homestead exemption is not available to a debtor who retains his home because it can be claimed only when the property is sold to satisfy a judgment. Higgins nonetheless sought to have the exemption recognized, and to have Closeout's lien avoided, asserting that an intervening Supreme Court decision, *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), implicitly overruled *Dixon*. He also asserted that once his claim of an exemption was recognized, Closeout's lien impaired his exemption if the Bankruptcy Court deemed his interest in the property

to be the equity remaining after the claim of the first mortgagee and the hypothetical costs of sale of the property were subtracted from the property's value. The Bankruptcy Court decided both of those issues in favor of Higgins, and Closeout has appealed those decisions to this Court. For the following reasons, the decision of the Bankruptcy Court will be reversed, and the case will be remanded for further proceedings consistent with this opinion.

### I.

The facts of this case are straightforward and not in dispute. As noted above, Closeout obtained its judgment lien on April 25, 1991. According to the bankruptcy petition, the amount of Closeout's claim was $6,742.19. The petition also stated the market value of Higgins' home, located at 7410 Lebanon Avenue in Reynoldsburg, Ohio, to be $60,000, and reflected that it was encumbered by a mortgage in favor of FDS Mortgage Company in the amount of $50,000. On schedule B–4 of his petition, Higgins claimed a $5,000 homestead exemption in that residence pursuant to Ohio Revised Code § 2329.66.

After Higgins moved to have Closeout's lien avoided on grounds that it impaired his homestead exemption, and requested the Bankruptcy Court to recognize the hypothetical costs of sale as a legitimate deduction from the value of his residence, the Bankruptcy Court scheduled the matter for a hearing. At the hearing, the parties stipulated to the following valuations. They agreed that the fair market value of the residence was $59,900, that the unpaid balance on the first mortgage was $49,000, and that the amount of Closeout's judgment lien was $5,000.

Higgins' position in the Bankruptcy Court was as follows. Based upon the stipulated values, the amount of equity in his residence appeared to be $10,900. However, if the hypothetical costs of sale, presumed to be 10% of the value, or $5,990, were then deducted from this figure, Higgins' equity would be only $4,910. Since that figure is less than the claimed $5,000 exemption, Higgins asserted that if Close-

out's lien were recognized, it would impair his exemption completely. Thus, he argued that the lien should be avoided pursuant to 11 U.S.C. § 522(f).

The Bankruptcy Court agreed with Higgins on both issues, and the Court is now asked to determine whether either of those decisions is correct. Because the facts were stipulated before the Bankruptcy Court, the only issues raised by the appeal are questions of law which this Court reviews *de novo*. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988).

## II.

Although this appeal appears to present two conceptually distinct issues, it is the Court's view, more fully discussed below (see Part III, *infra* ), that they are interrelated. If the Bankruptcy Court should have concluded that Higgins was not entitled to claim a homestead exemption because he chose to retain rather than sell his residence, the question of whether the hypothetical costs of sale of the residence should be deducted from its value in order to determine the value of Higgins' homestead exemption would appear to be irrelevant. In other words, if Higgins cannot claim a homestead exemption, it would seem to be of no moment whether his equity in the property is less than or greater than $5,000. Consequently, the Court turns first to the question of whether the Bankruptcy Court correctly concluded that it need not follow *In re Dixon,* and that it could permit Closeout's judgment lien to be avoided under 11 U.S.C. § 522(f).

Generally speaking, a debtor in bankruptcy is entitled to claim either those exemptions which are set forth in the Bankruptcy Code itself, or exemptions which are provided for by state law. Ohio has opted out of the federal scheme of exemptions for debtors in bankruptcy, and has substituted its own group of exemptions which are contained in Ohio Revised Code § 2329.66. The version of that statute ap-

plicable to this case provides in pertinent part as follows:

"(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(1) The person's interest, not to exceed $5,000, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence;"

Until 1989, there had been a division in the Bankruptcy Courts in Ohio as to the application of this exemption in the bankruptcy context. That debate was triggered by 11 U.S.C. § 522(f), which permits a debtor to avoid the fixing of a lien on "an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled" pursuant to § 522(b) (which, in the case of an Ohio debtor, incorporates the exemptions in § 2329.66) if the lien is a judicial lien. Thus, for judgment liens, but not for mortgage liens or other voluntarily-created liens, § 522(f) generally provides that the lien can be avoided if recognizing the lien would impair an exemption of the debtor's. The debate centered around whether the $5,000 homestead exemption provided for under Ohio law was available in bankruptcy under circumstances where the debtor proposed to keep the home rather than to sell it to satisfy judgments or other debts.

The Sixth Circuit resolved this conflict in *In re Dixon* by determining that, absent an involuntary disposition of the residence, the exemption is not "impaired" and therefore the judicial lien cannot be avoided. The Court reached that result by concluding that Ohio had, by statute, "limited the circumstances in which its homestead exemption is impaired to involuntary dispositions of the homestead property," and contrasted that limitation to the federal homestead exemption, which permits a debtor to avoid a judicial lien which would impair a $7,500 homestead interest whether or not the debtor proposed to sell the property as part of the bankruptcy proceedings. Under

*Dixon,* although such a judgment lien cannot be discharged in bankruptcy, if the debtor is later forced to sell the property, he or she is still entitled to retain up to $5,000 of the proceeds of sale, after any non-judicial lien was satisfied, so that the debtor leaves bankruptcy with this somewhat limited $5,000 interest intact. A later voluntary transfer, however, would appear to be subject to the judicial lien, a situation which would not exist if the federal exemption could be claimed. Consequently, a debtor who has the benefit of the federal exemption would appear to be better off than a debtor limited to the Ohio exemption.

■ Clearly, were it not for the intervening Supreme Court decision in *Owen v. Owen,* the Bankruptcy Court and this Court would have been required to follow *Dixon* and to refuse to avoid Closeout's lien. The question raised by this appeal is whether *Owen v. Owen,* which deals with a somewhat different issue arising under Florida law, is sufficiently irreconcilable with *Dixon* to allow inferior courts in this circuit to disregard *Dixon.* To state the issue another way, the Court must decide whether *Owen v. Owen* merely supports an argument that *Dixon* was wrongly decided, or whether its application to these facts is so compelling that this Court is justified in disregarding otherwise indistinguishable Sixth Circuit precedent.

### A.

■ There appears to be little clear authority within this circuit on the question of when an otherwise controlling precedential decision of the Sixth Circuit can be disregarded. The general rule, of course, is that the district courts are bound by decisions of the Sixth Circuit even if decisions from other circuits seem more persuasive. *See Timmreck v. United States,* 577 F.2d 372 (6th Cir.1978), *rev'd on other grounds,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Consequently, absent unusual circumstances, until such time as an *en banc* court overrules a panel decision, the district court is bound to follow that panel decision. *Truss v. Collier,* 574 F.Supp. 1249, 1260

(S.D.Ohio 1983) (Rice, J.). There is some district court authority, however, for the proposition that a district court can disregard Sixth Circuit precedent if that precedent is not "a detailed pronouncement which can withstand scrutiny." *In re Lowing,* 635 F.Supp. 520, 526 (W.D.Mich.1986). That may well be a standard that is insufficiently respectful of the force of precedent, however, since it would invite a district court to determine that the Court of Appeals has not stated its reasons either sufficiently persuasively or sufficiently in detail to require the district court to follow precedent even on an indistinguishable set of facts.

The Supreme Court has spoken on this issue as well, and, in *Rodriguez de Quijas v. Shearson/American Express,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989) stated the following in the context of overruling one of its own precedents, *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which had prohibited judicial enforcement of arbitration clauses contained in securities brokerage agreements:

"We do not suggest that the Court of Appeals on its own authority should have taken the step of renouncing *Wilko.* If a precedent of this Court has direct application in another case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

*See also Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir.1981) (if precedent is "still valid and not properly distinguishable at the time of the ruling ... it should have been applied. District Courts are bound by the law of their own circuit."), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

The above cases do not address a situation where there has been an intervening decision of the Supreme Court which suggests that a prior Court of Appeals precedent is no longer good law. Of course, if the Court of Appeals is directly reversed by the Supreme Court, or if the facts of the

Supreme Court's decision are indistinguishable from those presented to the Court of Appeals, this Court has a clear obligation to follow the Supreme Court. That is not, however, the case here. As more fully discussed below, the facts of *Owen v. Owen* are different from the facts of this case. The argument that is being advanced is that *Owen v. Owen sub silentio*, or implicitly, overruled *In re Dixon* or undercut its foundation sufficiently to allow the District Courts to disregard it.

It goes without saying that "a District Court should be extremely careful in concluding that circuit precedent is no longer good law," *Rodriguez v. Bowen*, 678 F.Supp. 1456, 1462 (E.D.Cal.1988), and that the District Court must be "powerfully convinced" that the circuit will overrule itself at the next available opportunity, *Beard v. Whitley County REMC*, 656 F.Supp. 1461, 1471 (N.D.Ind.1987), *aff'd*, 840 F.2d 405 (7th Cir.1988). Although the Sixth Circuit has not addressed this issue directly, the Seventh Circuit has expressed itself on two different occasions with respect to the issue of whether clear circuit precedent can be rejected in the light of intervening events. In *Olson v. Paine, Webber, Jackson & Curtis*, 806 F.2d 731, 734 (7th Cir. 1986), the Court stated that if intervening events such as Supreme Court decisions or statutory changes "make it almost certain that the higher court would repudiate the doctrine if given a chance to do so, the lower court is not required to adhere to the doctrine." In *Norris v. United States*, 687 F.2d 899, 904 (7th Cir.1982), the majority stated that "sometimes later decisions, though not explicitly overruling or even mentioning an earlier decision, indicate the court very probably will not decide the issue the same way the next time. In such a case, to continue to follow the earlier case blindly until it is formally overruled is to apply the dead, not the living, law." In a concurring opinion in that case, however, Judge Cudahy observed that "[m]ore than the inclinations of the majority of the Supreme Court, or of a panel of the court of appeals, must shift before a controlling precedent can be declared defunct." *Norris v. United States*, 687 F.2d at 909.

■ This Court must determine, from this body of law, the precise contours of the standard to be applied when considering whether to disregard controlling precedent, especially precedent as recent as *In re Dixon*. The *Norris* standard, tied to the concept that the higher court "very probably" will decide the issue differently when presented with it again, seems insufficiently deferential. Given the way in which our judicial system is predicated upon the binding nature of precedent, and the value of certainty in the law, a standard which would require a party advocating departure from precedent to show the invalidity of that precedent to a "near certainty" strikes this Court as more appropriate. Whether that or some other language is chosen, *sub silentio* overrulings of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence, and if the Court is to be convinced that such overruling has taken place, there must be strong, objective evidence supporting that conclusion. The question then becomes whether, under the facts of this case, the debtor has met his burden of proving that *Owen v. Owen* is completely irreconcilable with *In re Dixon*. Answering that question depends on a fairly detailed analysis of each decision as well as the provisions of the Bankruptcy Code and the Ohio Revised Code which are involved.

### B.

*Owen* involved a somewhat unusual set of facts, and one which could not arise under Ohio law. Florida has a homestead exemption which, until 1985, did not permit a condominium to be claimed as a homestead. The debtor bought a condominium in 1984 in a county where his wife had recorded a judgment lien. He filed bankruptcy in 1986. It was not disputed that, under Florida law, the lien took precedence over his homestead exemption because the statute extending the homestead exemption to condominium property did not purport to make liens already in place subject to a homestead exemption claim. The question presented in *Owen* was whether, notwithstanding the operation of Florida law, the

debtor was entitled to avoid the judicial lien on the condominium.

The Supreme Court concluded that the lien could be avoided in bankruptcy. It reached that result by concluding, after analyzing various portions of the bankruptcy statute, that the debtor's "aggregate interest" in an asset which is part of the bankruptcy estate is something different than what would be traditionally considered to be his "equity" in the property. In other words, the "aggregate interest" which the *Owen* debtor had in his condominium was his interest measured *without reference to the judicial lien;* as the Court put it, the rule to be applied to both federal and state exemptions is to determine what exemption the debtor would have been entitled to *"but for the lien at issue,"* and then to determine whether by recognizing the lien the debtor is entitled to something less. *See Owen v. Owen,* 500 U.S. at ——, 111 S.Ct. at 1837.

In describing this issue earlier in the opinion, the Supreme Court described the creditor's argument as one which would force a bankruptcy court to recognize "built-in limitations on state exemptions...." *Owen,* 500 U.S. at ——, 111 S.Ct. at 1836. Two examples of decisions which had accepted such an argument, albeit with respect to a different type of state exemption, were given. First, the Court referred to *In re Pine,* 717 F.2d 281 (6th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 183 (1984). *Pine* involved, *inter alia,* Tennessee's exemption for household goods, which is unavailable to a debtor whose goods are encumbered by any type of lien. By way of contrast, 11 U.S.C. § 522(d)(3) permits a debtor to exempt up to $4,000 in household furnishings, goods, wearing apparel, and other personal property used in the household of the debtor or a dependent, and 11 U.S.C. § 522(f) permits the avoidance of a nonpossessory, nonpurchase-money security interest in such items. *Pine* held that the state limitation had to be given effect in bankruptcy, essentially because the debtor did not have an "interest" in the property under state law when it was encumbered by a lien.

The *Pine* court, in turn, had relied on the Fifth Circuit's decision in *In re McManus,* 681 F.2d 353 (5th Cir.1982), which is the other case to which the *Owen* court referred to disapprovingly. Justice Stevens' concurring opinion in *Owen* makes clear that the Supreme Court essentially adopted the position advanced by the dissenting opinion in *McManus.*

This discussion is directly relevant to the issue of whether *In re Dixon* is still good law because *Dixon* relied on both *In re Pine* and *In re McManus. In re Dixon,* 885 F.2d at 329. In particular, *Dixon* begins with the premise that when a state has opted out of the federal exemptions, "an Ohio debtor may avoid liens only on that property which the state has declared subject to exemption." *Id.* Not surprisingly, even though *In re Pine* has not been specifically overruled by the Sixth Circuit, bankruptcy courts within the Sixth Circuit have declined to follow it since *Owen v. Owen* was decided. *See, e.g., In re Sullins,* 135 B.R. 288 (Bankr.S.D.Ohio 1991) (Waldron, J.); *see also In re Puhl,* 136 B.R. 487 (Bankr.N.D.Ohio 1992). In fact, there do not appear to be any bankruptcy court opinions asserting that *Pine* is still good law.

*Pine,* of course, even though it involved the question of the debtor's interest in personal property rather than real property, is otherwise difficult to distinguish from *Owen.* It can certainly be suggested that if a debtor's interest in property of the estate to which an exemption is to be applied is measured without reference to a lien or, in the case of personal property, a nonpurchase-money, nonpossessory security interest, whether the particular property at issue is realty or personalty is a distinction without a difference. Further, *Pine* was specifically mentioned in *Owen.* Thus, the case for concluding that *Pine* is no longer good law is fairly strong. This discussion illustrates, however, that the question of whether *Dixon* has also been overruled involves more than a straightforward application of the holding in *Owen,* and requires close examination of the rationales of each case to see if there is a legally

supportable basis for distinguishing them. The existence of such a basis would, of course, be strongly suggestive that the degree of certainty required to pronounce *Dixon* a dead letter is lacking.

If one views *Owen v. Owen* generally, it stands for the proposition that persons who claim exemptions under state law should be treated similarly to those who have claimed the similar exemption under federal law. To that extent, it is inconsistent with *Dixon*. Nevertheless, this principle does not require states to provide debtors with the same exemptions that federal law makes available, or even to provide any exemptions at all. Rather, *Owen* teaches that when a state has created exemptions, the Bankruptcy Code does not permit a creditor's interest in exempt property to trump the debtor's exemption *if the creditor's interest is avoidable under § 522(f)*. The Court must, with this specific teaching in mind, now decide if *Dixon* is so patently inconsistent with *Owen* that it can be said with substantial certainty that *Dixon* is no longer good law.

At least two bankruptcy courts in Ohio have held that *Dixon* must be followed notwithstanding the apparent tension between *Dixon* and *Owen*. *In re Braverman*, 150 B.R. 681 (Bankr.S.D.Ohio 1993) (Perlman, J.); *In re Bursee*, 142 B.R. 167 (Bankr.N.D.Ohio 1992) (Williams, J.). Other bankruptcy courts in Ohio have reached the opposite result. *In re Boswell*, 148 B.R. 31 (Bankr.N.D.Ohio 1992); *In re Moreland*, 142 B.R. 221 (Bankr.S.D.Ohio 1992) (Waldron, J.). These cases illustrate the competing rationales advanced by the parties to this appeal on the issue of whether *Dixon* is still good law.

*Braverman* and *Bursee* both rely on the proposition that there is a fundamental difference between allowing state law to govern the extent to which a judicial lien may supersede, or impair, an otherwise valid claim of exemption, the precise situation addressed in *Owen*, and allowing state law to determine whether the exemption is available to the debtor in the first instance. Under this approach, Ohio could not restrict the trustee's power under § 522(f) to

avoid a judicial lien on homestead property being sold as part of the bankruptcy proceedings, since the exemption has been extended to a debtor whose property is sold involuntarily. Nevertheless, Ohio can restrict the debtor's ability to claim an exemption at all simply by providing that debtors who keep their property are not entitled to a homestead exemption, a restriction that applies whether or not a judicial lien or some other type of interest avoidable under § 522(f) has attached to the property.

The opposing line of cases, including the Bankruptcy Court's decision in the instant case, conclude that once an exemption is created under state law, federal law controls not only the question of whether judicial liens that would otherwise impair the debtor's interest in the exempt property can be avoided, but also controls the question of *when* the claim of exemption must be recognized. Under that rationale, Ohio's statutory choice to defer recognition of a homestead exemption until an involuntary disposition of the property has occurred, a choice which prevents the trustee from avoiding judicial liens on homestead property that the debtor chooses to retain, is an invalid limitation on the federally-granted power of the trustee. These latter decisions are consistent with a broad interpretation of *Owen*, which seems to disfavor different treatment of debtors who are entitled to the federal homestead exemption and debtors who are forced to choose the state law version. There is no question that, had the debtor in this case been allowed to claim the federal homestead exemption, Closeout's lien could have been avoided to the extent that it impaired the debtor's exempt interest, notwithstanding the debtor's choice to retain the property.

In this Court's view, the variance in the factual situations and legal issues presented in *Owen* and *Dixon* is more than simply a "distinction without a difference," see *Union Pacific R. Co. v. United States*, 117 U.S. 355, 359, 6 S.Ct. 772, 774, 29 L.Ed. 920 (1886), and the Court is therefore convinced that *Dixon* has retained enough vitality (although its survival at the Court of Ap-

peals level may well be in doubt) to require that it be treated as binding precedent by a bankruptcy or district court in this circuit. This is so because there is at least an arguable difference between a state law that allows an otherwise avoidable lien to prevail over a debtor's claim for exemption *in the bankruptcy setting*, thus conflicting with § 522(f), and a state law which provides for an exemption that is simply not available at all in the bankruptcy context. Ohio Rev.Code § 2329.66(A)(1), as definitively interpreted by *Dixon*, clearly falls into this latter category.

As the Supreme Court observed in *Owen*, 500 U.S. at ——, 111 S.Ct. at 1835, "nothing in [the Bankruptcy Code] limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." In this case, Ohio has done exactly that; it has accorded a debtor in bankruptcy no homestead exemption unless his or her homestead property is involuntarily sold or transferred as a part of the bankruptcy proceedings. Thus, in the case of the debtor in the instant case, who has chosen to retain rather than sell the property, there is simply no exemption which can be claimed, and the lack of an exemption is determined not by the presence or absence of a judicial lien or other claim avoidable under § 522(f), but rather results from the operation of the statutory language recognizing the exemption only upon "execution, garnishment, attachment, or sale to satisfy a judgment or order...." Since a cogent argument can be made that *Owen* does not deny Ohio the right to define its exemption in this way, *and because the exemption is unavailable to this debtor without regard to whether the lien held by Closeout Distributors is avoided or not*, the Court concludes that it is not substantially or virtually certain that the Court of Appeals will read *Owen* as implicitly overruling *Dixon*, and *Dixon* will therefore be followed. The fact that two Ohio bankruptcy courts have reached the same conclusion is, while not determinative, further evidence that the requisite degree of certainty required to pronounce *Dixon* dead is lacking. The decision of the Bankruptcy Court on this issue will therefore be reversed.

### III.

As noted above, the Bankruptcy Court also accepted Higgins' argument that hypothetical costs of sale should be deducted from the value of his residence before his interest in the residence was determined. According to the Bankruptcy Court's decision, Higgins made this argument in order to support his contention "that the judgment lien held by Closeout should be avoided because, after deducting the hypothetical cost of selling the residence, his claimed exemption of $5,000 in the residence is completely impaired by Closeout's lien." Opinion and Order of June 19, 1992, at 2.

This Court has held, however, that Higgins is not entitled to claim a homestead exemption in these proceedings because he has chosen to retain his residence rather than have it sold. *Ipso facto*, since Higgins has no exemption which can be claimed, Closeout's lien cannot be avoided under § 522(f) and would therefore appear to survive the bankruptcy proceedings intact. Additionally, since the residence is not being sold, and it appears to be the only asset to which Closeout's judicial lien attaches, it would not seem to be of any consequence to the proceedings whether Closeout is treated as a secured or unsecured creditor.

Under these circumstances, it strikes the Court that it may be wholly unnecessary to determine whether the hypothetical costs of sale should be recognized. Further, even if it is important to know whether Closeout's lien exceeds what would otherwise be Higgins' equity in his residence, the valuations to which the parties stipulated show that the difference between the residual equity, calculated under Higgins' theory, and Closeout's lien, is only $90. It is entirely possible that, by virtue either of additional payments made by the debtor on the first mortgage or an increase in the value of the property, these stipulated figures are no longer accurate, and Higgins' "residual equity" may now exceed $5,000, making it almost certain that the deduction

of the hypothetical costs of sale is of no moment.

In light of the substantial uncertainty as to whether the hypothetical costs of sale issue is of any consequence under the particular facts of this case, and because the Bankruptcy Court did not consider this issue apart from the question of whether Closeout's lien could be avoided under § 522(f), the Court believes that the more prudent course of action is to remand the case for further proceedings. The Bankruptcy Court may then, taking into account this Court's decision on the first issue, revisit this latter issue with the parties and determine whether any further proceedings are necessary. If the Bankruptcy Court concludes that the issue is still one which materially affects the outcome of this bankruptcy proceeding, it may issue an order to that effect which sets forth the particular way in which the issue is of consequence, together with updated factual findings concerning the valuations at issue, and the parties may then file a further appeal if dissatisfied with the Bankruptcy Court's decision.

### IV.

Based upon the foregoing, the decision of the Bankruptcy Court issued on June 19, 1992, is **REVERSED,** and this case is remanded to the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division, for further proceedings consistent with this opinion.