In re Charles Richard
EVELAND, Jr., Debtor.

In re Francisco RAMON, Debtor.

In re James Edward COOPER and
Alma Louise Cooper, Debtors.

In re Jan Ellis DRUPIEWSKI, Debtor.

In re Joseph Jean HIRSCHFIELD and
Valeri Jean Hirschfield, aka Valeri
Jean Schroeder, Debtors.

In re Michael Patrick MURPHY, dba
Aerobics Academy, and Tresa
Murphy, Debtors.

Bankruptcy Nos. 287–04880–B–7, 287–04191–B–7, 287–03971–B–7, 287–01994–B–7, 287–05927–B–7 and 288–00188–B–7. Motion Nos. GBG–1, JAG–1, JAT–1, BD–1, GGG–1 and JEV–1.

United States Bankruptcy Court,
E.D. California.

June 2, 1988.

Gerald B. Glazer, Sacramento, Cal., for Charles Richard Eveland, Jr.

William Conway, Redding, Cal., Trustee.

John A. Griffen, Griffen & Barbieri, Inc., Citrus Heights, Cal., for Francisco Ramon.

Gregg A. Eichler, Sacramento, Cal., Trustee.

John A. Tosney, Sacramento, Cal., for James Edward & Alma Louise Cooper.

John R. Roberts, Placerville, Cal., Trustee.

Peter G. Fetros, Gregory W. Foster, Law Offices of Donald G. Nelson, Sacramento, Cal., for defendant ITT Financial Services.

Connie A. Holt, Bardwil & Dahl, Sacramento, Cal., for Jan Ellis Drupiewski.

Stephen C. Green, Green, Green & Green, Rocklin, Cal., for Joseph Jean Hirschfield and Valeri Jean Hirschfield, aka Valeri Jean Schroeder.

James E. Vaughn, Sacramento, Cal., for Michael Patrick Murphy d/b/a Aerobics Academy, and Tresa Murphy.

## MEMORANDUM OPINION

DAVID E. RUSSELL, Bankruptcy Judge.

The Debtors in each of the above submitted cases have filed motions under 11 U.S.C. § 522(f)(2) to avoid nonpossessory, nonpurchase-money security interests in

their personal property held by ITT Financial Services (ITT). Subsection (f) of § 522 [1] reads as follows:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; or
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

Each of the Debtors has claimed the subject personal property as exempt under one or more of subsections (1), (3), (4), (5) or (6) of California Code of Civil Procedure (C.C.P. § 703.140(b)) which permits bankruptcy debtors to elect, as an alternative to the standard exemptions allowed in California, the exemptions therein listed. Those exemptions track the exemptions formerly provided in § 522(d) before the 1984 amendments to that section.[2]

ITT does not oppose any of the motions *in toto*, admitting that its liens are nonpossessory and nonpurchase-money and that many of the items of personal property in question are properly catergorized within the ordinary definitions of the types of personal property listed in § 522(f)(2)(A) and (B) and do not exceed the monetary limits set forth in the applicable subsections of C.C.P. § 703.140(b). However, ITT does object to the avoidance of their liens on certain items of personal property arguing that those items are not household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry, nor are they implements, professional books, or tools, of the trade of the Debtors. These items include, *inter alia*, bicycles, cameras, snow skis, poles, and boots, binoculars, camping equipment, fishing equipment, personal computers, rifles, shotguns, handguns, and exercise equipment. ITT also objects to the avoidance of any portion of their liens that exceed the monetary limitations of C.C.P. § 703.140.

## DISCUSSION

One of the striking features of § 522(f) is that it does not contain, in either its beginning paragraph or in either of its two subsections, the common restrictions seen in exemption statutes, such as a monetary

---

1. All references to Code sections are to Title 11 of the U.S.C. unless otherwise noted.

2. The pertinent subsections of C.C.P. § 703.140 read as follows:

> (b) ...
>
> (1) The debtor's aggregate interest, not to exceed seven thousand five hundred dollars ($7,500) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
>
> (2) ...
>
> (3) The debtor's interest, not to exceed two hundred dollars ($200) in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.
>
> (4) The debtor's aggregate interest, not to exceed five hundred dollars ($500) in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.
>
> (5) The debtor's aggregate interest, not to exceed in value four hundred dollars ($400) plus any unused amount of the exemption provided under paragraph (1), in any property.
>
> (6) The debtor's aggregate interest, not to exceed seven hundred fifty dollars ($750) in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

limit or a limiting adjective such as "necessary". Just as noteworthy, however, is the disparate treatment of the two types of liens described in subsection (f). Under subsection (1), a debtor may avoid *any* judicial lien on *any* property, so long as it is exempt property. Under subsection (2), a debtor's power to avoid the lien of a security interest is carefully circumscribed by the property to which it attaches. The reason for the different treatment of the two types of liens is patently obvious; the judicial lien is an involuntary lien, whereas the lien of the security interest is consensual; it can only be created by a contract between the parties. Congress interfered with contractual rights only because it was trying to correct what it perceived as a serious abuse by certain loan companies dealing with unsophisticated consumer borrowers.

It was the House, rather than the Senate, that was most concerned about the perceived abuses by "small loan" creditors against consumer debtors (See House Report No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) Chapter 3, Part IIB, Exemptions, pp. 126–127 and Appendix I, Statement of David H. Williams, attorney, Division of Special Projects, Bureau of Consumer Protection, Federal Trade Commission, pp. 166–173, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6087, 6127). The particular abuse stressed in the cited parts of the Report was the threat of repossession of household goods of little resale value and generally high replacement costs used by creditors to coerce payment on their consumer loans. Also prominently mentioned was the indignity suffered by the debtor who lost intimate family possessions. The language therein should be contrasted to the language used in the Senate Report in criticizing the total exemptions potentially available to husbands and wives if they were to "stack" their exemptions (the exemption amounts in H.R. 8200 were lowered before passage of the new law):

"Together, they could thus retain after bankruptcy, very substantial amounts of property, while their debts would have been discharged. The committee feels that the policy of the bankruptcy law is to provide a fresh start, but not instant affluence, as would be possible under H.R. 8200. Moreover, current law has allowed the several state legislatures flexibility to meet the needs and fresh start requirements of the debtors of their particular states."

(Senate Report No. 95–989 to accompany H.R.S. 2266, 95th Congress (2nd Sess.) (1978) p. 6, U.S.Code Cong. & Admin. News 1978, p. 5792.)

While the legislative history may not be as enlightening as we would like in respect to the debtors' lien avoidance powers, it does show that while Congress was concerned about unfair practices in respect to small consumer loans, it was equally concerned about unduly interfering with contractual rights, the potential "instant-affluence" of discharged debtors, and the flexibility of the state legislatures in determining the exemptions to be allowed to their citizens. Congress fashioned a unique compromise in respect to the avoidance of the consensual lien of the small loan creditor. Section 522(f)(2) permitted debtors to avoid those consensual liens only on the generalized items of low resale value which it considered necessary to the dignity of debtors and their "fresh start", and used the identifying language for those items found in most state exemption statutes. The States were left free to restrict the total value of the listed exemptible items should they choose to do so. Thus, small loan creditors would no longer be able to coerce payment from bankrupt debtors by threatening to take the wife's wedding ring, the baby's crib, the family furniture or the handicapped person's wheelchair. But, in order to avoid unduly interfering with the security interest liens of other lenders, § 522(f)(2) was drafted so that possessory liens, such as pledges, and purchase money liens could not be included in the debtors' avoidance powers.

■ ITT argues that those courts that have looked at state laws to determine what liens can be avoided under 11 U.S.C. § 522(f)(2) are incorrect; that the definitions of the words used in that section are determined by federal law and not state

law. I agree. Except for those states which have not "opted out" of the bankruptcy exemptions permitted under § 522(d), what property is exempt is determined by state law, but federal law determines what liens may be avoided. *Matter of Thompson*, 750 F.2d 628, 629 (9th Cir. 1984); *In re Wright*, 34 B.R. 643 (B.Ct.W. D.Ken.1983); 3 *Collier on Bankruptcy*, 15th Ed. ¶ 522.29 at page 522–88. There is no need for us to analyze what property is exempt under California law in the cases at bar because neither ITT nor any other creditor has filed timely objections to the exemptions of these particular debtors.

Absent any definitions in the Bankruptcy Code for the words "household furnishings," "household goods," (but see § 101(7) which defines "consumer debt"), etc., we must look to the ordinary meanings of those words as understood by the members of Congress. If we examine subsection (d) of § 522 and compare it to subsection (f)(2) it is obvious that, insofar as those debtors able to choose the federal exemption scheme were concerned, their "fresh start" exemptions were limited to the ungenerous amounts of $200.00 in any one item (and now, after the 1984 amendments, $4,000.00 in aggregate value) in household goods, wearing apparel, appliances, books, animals, crops, or musical instruments (subsection (d)(2)), $500.00 in jewelry (subsection (d)(4)) and $750.00 in tools of the trade (subsection (d)(6)).

▮▮▮ There is no reason to believe that Congress meant to include all consumer goods within the ambit of § 522(f)(2). It did not use those words; instead it listed items normally and traditionally found in the exemption statutes of the various states. There is also no reason to believe that Congress meant to eliminate small loan companies from the market place; they do, after all, provide a needed source

of financing for less affluent consumers. The old adage that "exemptions should be liberally construed" should not be invoked to permit debtors to vitiate otherwise valid consensual liens on their property, especially if that property consists of expensive consumer goods with reasonably high resale values not found in most residences.[3] In other words, we should limit the lien avoidance power to those items which are generally understood throughout the country as being included in the "laundry list" of § 522(f)(2). Since the lien avoidance power is a federal remedy, it must be applied uniformly.[4] Thus, while the "list" of items can be restricted by state exemption laws, it should not be expanded by those laws.

▮▮▮ Nevertheless, I am bound by the decision in *In re Lucas*, 77 B.R. 242 (9th Cir.B.A.P.1987) even though I do not believe, as was held therein, that the emphasis in California law on the debtor's station in life and manner of living in determining exemptions is determinative of the scope of the lien avoidance power given to the debtor under ·§ 522(f)(2). Under the rationale of *In re Lucas*, it would appear that all of the items disputed by ITT and listed earlier in this opinion, with the possible exception of firearms, are exempt, and I reluctantly so hold. As to the firearms, I hold that the liens on them are not avoidable under § 522(f)(2)(A) because California no longer lists them as exempt, as it once did,[5] and because owning them has little to do with one's standard of living. However, firearms might be exempt to law enforcement officers under § 522(f)(2)(B).

Since little or no evidence was presented in any of the cases at bar in respect to the market value of the individual items, it will be necessary for the Debtors to notice hearings for the presentation of evidence in this respect. To the extent that the market

---

**3.** See Exhibit 1, a list of the items given by the Debtor in one of the cases at bar to ITT to secure their liens. The values assigned to the items were those given by the Debtor to ITT when the loan was obtained. It is hard to see why all of the items are necessary for the Debtor's "fresh start".

**4.** See 55 ALR Fed 353, an annotation of § 522(f)(2), for a summary of cases construing or applying that section of the Bankruptcy Code. There appears to be little uniformity among the courts.

**5.** See former C.C.P. § 690.1, which was repealed in 1982.

value of any item exceeds $200.00 under subsection (3) of C.C.P. § 703.140(b), $500.00 under subsection (4), or $750.00 under subsection (6), ITT's liens thereon shall not be avoided, unless the Debtor claims the excess as exempt under the "wild card" of subsection (5) (See *Augustine v. U.S.*, 675 F.2d 582 (3rd Cir.1982).

Separate orders will be necessary in each case after the hearings on the market value of the items in question are concluded.

### EXHIBIT 1

| | |
|---|---:|
| 1 Mitsubishi Stereo VHH Wireless Remote | $1,100.00 |
| 1 Compaq Portable Computer | 2,650.00 |
| Symphony, Lotus 1,2,3 Software | 500.00 |
| 1 Phone Mate Answering Machine | 120.00 |
| 1 Atari Video Game | 200.00 |
| 1 Sansui Stereo | 600.00 |
| 1 Tape Player | 250.00 |
| 2 Air Maratz Speakers | 450.00 |
| 1 Magnavox Radio | 100.00 |
| 1 Ten Speed Bicycle | 180.00 |
| 1 Set AMF Golf Clubs | 270.00 |
| Pr. Water Skis–Nash/Slolam Ski AMF | 245.00 |
| Bench, 110 Pound Weight Exercise Equipment | 300.00 |
| 1 Canon Sure–Shot Camera | 130.00 |
| 1 Black & Decker Drill | 50.00 |
| 1 Sears Weed Eater | 79.00 |
| 1 Sears Lawn Mower | 179.00 |
| 1 Sears Edger | 100.00 |
| Misc. Garden Tools | 100.00 |
| 1 Diamond Men's Ring | 800.00 |
| 1 "Ole" Original Oil | 250.00 |
| | $8,753.00 |