In re Daniel CUSHMAN, Debtor.

Bankruptcy No. 94–50996.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

June 19, 1995.

Marc P. Gertz, Goldman & Rosen, Akron, OH, for debtor.

Stephen D. Hobt, Strachan, Green, Miller, Olender & Hobt, Cleveland, OH, for creditor.

## ORDER GRANTING DEBTOR'S MOTION TO AVOID LIEN

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter came before the Court on debtor's Motion to Avoid Lien of creditor, Avco Financial Services (AVCO). AVCO filed an objection to debtor's motion and the matter came on for hearing on January 31, 1995. Appearing at said hearing were Marc Gertz, counsel for debtor; and Stephen Hobt, counsel for AVCO. Counsel briefly stated their respective positions on the matter and acknowledged that there were no factual issues in dispute. Thereafter, the Court took the matter under advisement and invited each party to submit supplemental briefs. Each party timely filed such supplemental briefs.

### FACTS

On June 19, 1991, debtor borrowed approximately $5,900.00 from AVCO. As collateral for repayment of the monies loaned, AVCO took a nonpurchase-money security interest in various items of the debtor's personal property and household goods. On June 21, 1994, debtor filed a voluntary chapter 7 petition and thereafter sought to avoid AVCO's lien. At the time of filing, there was currently due to AVCO approximately $3,780.00.

**140**

Debtor contends that AVCO's lien impairs an exemption to which he would be entitled pursuant to 11 U.S.C. § 522(f) and should thus be avoided. AVCO contends that pursuant to the holding in *Resolution Trust Corp. v. Moreland (In re Moreland)*, 21 F.3d 102 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 378, 130 L.Ed.2d 328 (1994), the debtor is not yet entitled to any exemption in the personal property at issue because there has been no forced judicial sale.

## ISSUE

The issue raised in this matter is whether debtor may avoid AVCO's lien pursuant to 11 U.S.C. § 522(f) and Ohio Revised Code (O.R.C.) § 2329.66(A).

## ANALYSIS

■ Pursuant to 11 U.S.C. § 522(f), the debtor may avoid the fixing of a lien on the debtor's interest in household goods "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a nonpossessory, nonpurchase-money interest." The referenced "subsection (b)" provides a list of federal exemptions, but also provides that states may "opt out" of this federal list. Ohio is such an "opt out" state. Ohio Revised Code § 2329.66(A) addresses the state exemptions and states that:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order as follows:

\*   \*   \*   \*   \*   \*

(4)(b) [T]he person's interest not to exceed two hundred dollars in any particular item, in household furnishings, household goods, appliances, books, animals, crops, musical instruments,

firearms, and hunting and fishing equipment, that are held primarily for the personal, family, or household use of the person.

■ In *Resolution Trust Corp. v. Moreland (In re Moreland)*, 21 F.3d 102, 107 (6th Cir.1994), the Sixth Circuit addressed Ohio exemptions as they relate to a homestead and held that a debtor may avoid a judicial lien that impairs a homestead exemption only when the property affected is subject to a judicial sale or involuntary execution. *See also Ford Motor Credit Corp. v. Dixon (In re Dixon)*, 885 F.2d 327 (6th Cir.1989); O.R.C. § 2329.66(A)(1). The creditor in the case at bar asserts that the *Moreland* decision is equally applicable to cases dealing with lien avoidance as to household goods. Therefore, AVCO argues, because the debtor's property was not subject to a judicial sale or involuntary execution, no right of exemption yet exists and debtor's motion must be denied as premature.[1]

This exact issue has been previously addressed by this Court in *In re David and Muffin Wood,* Case No. 94–51365 (December 27, 1994). In that case, this Court held that the *Moreland* decision dealt specifically with the Ohio homestead exemption, and that any extension of that decision to household goods would be inappropriate in light of *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). This Court's reasoning in the *Wood* case was based on the following.

In the mid-1980's the Sixth Circuit held that a debtor could not avoid a nonpossessory, nonpurchase-money security interest under 11 U.S.C. § 522(f), if under the state law on which the debtor relied for its exemption, that exemption was limited only to the debtor's interest in such property after deducting liens and security interests. In short, if the debtor had granted a security interest in such property, the debtor's interest was limited to the residue after considering the se-

---

**1.** This case was filed prior to the effective date of the Bankruptcy Reform Act of 1994. Thus, the new statutory provision which provides a simple arithmetic test to determine if and when a lien impairs an exemption for the purposes of § 522 lien avoidance is not applicable in this case. *See* 11 U.S.C. § 522(f)(2). Therefore, although Congress in the 1994 amendment to 11 U.S.C.

§ 522(f) sought to change the results reached in cases such as *In re Dixon,* 885 F.2d 327 (6th Cir.1989), *In re Spears,* 744 F.2d 1225 (6th Cir. 1984), and *In re Pine,* 717 F.2d 281 (6th Cir. 1983), this Court is bound by the statutory and case law as it existed prior to the passage of the Bankruptcy Reform Act of 1994.

cured loan amount. *In re Pine*, 717 F.2d 281 (6th Cir.1983), *cert. denied*, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 183 (1984); *In re Spears*, 744 F.2d 1225 (6th Cir.1984); O.R.C. § 2923.66(A)(4)(b).

In 1991, *In re Pine* was one of two cases that the Supreme Court specifically cited to exemplify an approach to 11 U.S.C. § 522(f) that was being rejected in its decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). *Id.*, at 309 n. 1, 111 S.Ct. at 1836 n. 1. The *Owen* decision required that state and federal exemptions be treated uniformly for the purpose of 11 U.S.C. § 522(f). In short, *Owen* interpreted 11 U.S.C. § 522(f) as permitting states to define what items of property are subject to exemption, but created a uniform federal approach as to extending such exemption to the entire item of property. *Id.*, at 310–14, 111 S.Ct. at 1836–39. Since *Owen*, this has been the consistent interpretation by bankruptcy courts in Ohio with regard to personal property. *See Higgins v. Closeout Distr. (In re Higgins)*, 159 B.R. 212 (Bankr.S.D.Ohio 1993); *In re Boswell*, 148 B.R. 31 (Bankr. N.D.Ohio 1992); *In re Wheeler*, 140 B.R. 445 (Bankr.N.D.Ohio 1992); *In re Puhl*, 136 B.R. 487 (Bankr.N.D.Ohio 1992); *In re Sullins*, 135 B.R. 288 (Bankr.S.D.Ohio 1991).

*Moreland, supra*, limits its holding to the application of 11 U.S.C. § 522(f)(1) to judicial liens that impair homestead exemptions under O.R.C. § 2329.66(A)(1). The discussion of the *Owen* lien avoidance test by the panel in *Moreland* deals only with its effect on the Ohio homestead exemption. *Moreland*, 21 F.3d at 107. Nowhere in *Moreland* is there a discussion of *Pine* or *Spears*, nor is there any discussion of lien avoidance as it pertains to personal property including household goods.

To date, no other opinions have cited to the *Moreland* case on this exact issue. However, given *Moreland's* narrow discussion of lien avoidance only as it applies to the Ohio homestead exemption, and in light of the Supreme Court's decision in *Owen*, this Court cannot find authority in the cases that bind it to extend *Moreland* beyond its facts.

AVCO argues that *Moreland* was in no way limited to the Ohio homestead exemption as the application of the provisions of O.R.C. § 2329.66(A) is the same with respect to household goods as it is with all other exemptions. There is unquestionably a tension between the Supreme Court's statutory interpretation in *Owen* and the result reached in *Moreland*. That tension can be relieved, however, by a focus on the precise nature of the two different exemptions and the property with which each is associated.

■ A distinction between the two exemption provisions lies in the very nature of the property to which those exemptions apply. The Ohio homestead exemption applies to "one parcel or item of real or personal property that the person or a dependent of the person *uses as a residence*." O.R.C. 2329.66(A)(1)(b) (emphasis added). Therefore, the real property in question obtains a possible exemption status at the time that it is purchased and occupied as a residence and prior to the recordation and attachment of any judicial lien. Such property, however, may lose its "homestead" status should its use by the debtor change. *See, e.g., Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935 (8th Cir.1990) (discussing the effect of a debtor's death on the status of his former residence as a "homestead."). Thus, in *Dixon* and in *Moreland*, the Sixth Circuit emphasized that the homestead exemption in Ohio "is available" only at the time of the involuntary execution or judicial sale. The *Moreland* panel noted that this interpretation of the Ohio homestead exemption did not deprive the debtor of the exemption, but affected only the timing of its availability.

■ Household goods, on the other hand, must be designated as exempt via the election of exempt status by the debtor after certain liens have already attached. The difference in the very nature of these exemptions and their corresponding lien avoidance provisions was evidenced by Congress when it decided to treat them differently within the very wording of 11 U.S.C. § 522(f). Under subsection (1), a debtor may avoid *any* judicial lien on *any* property, so long as it is exempt property. Under subsection (2), a debtor's power to avoid the lien of a security interest is specifically defined by the proper-

ty to which it attaches. "The reason for the different treatment of the two types of liens is patently obvious; the judicial lien is an involuntary lien, whereas the lien of the security interest is consensual; it can only be created by a contract between the parties. Congress interfered with contractual rights only because it was trying to correct what it perceived as a serious abuse by certain loan companies dealing with unsophisticated consumer borrowers." *In re Eveland,* 87 B.R. 117, 120 (Bankr.E.D.Cal.1988). The *Eveland* Court went on to describe Congress' intent in drafting 11 U.S.C. § 522 when it stated:

> Congress fashioned a unique compromise in respect to the avoidance of the consensual lien of the small loan creditor. Section 522(f)(2) permitted debtors to avoid those consensual liens only on the generalized items of low resale value which it considered necessary to the dignity of debtors and their "fresh start," and used the identifying language for those items found in most state exemption statutes. The States were left free to restrict the total value of the listed exemptible items should they choose to do so. Thus, small loan creditors would no longer be able to

coerce payment from bankrupt debtors by threatening to take the wife's wedding ring, the baby's crib, the family furniture or the handicapped person's wheelchair. But in order to avoid unduly interfering with the security interest liens of other lenders, § 522(f)(2) was drafted so that possessory liens, such as pledges, and purchase money liens could not be included in the debtor's avoidance powers.

*In re Eveland,* 87 B.R. 117, 120 (Bankr. E.D.Cal.1988).

Congress' intent is further evidenced in the legislative history to 11 U.S.C. § 522(f)[2], where there is the clear contemplation that the value of household goods upon which a lien would be avoided under 11 U.S.C. § 522(f) would be nominal to the creditor relative to the potentially devastating effect of repossession of the collateral upon the individual debtor and his dependents. *Id.* Congress also acknowledged that involuntary judicial action, the very basis of the court's rationale in *Moreland,* rarely affects the household goods provision of 11 U.S.C. § 522(f).[3]

---

**2.** The legislative history to 11 U.S.C. § 522(f) states:

> [T]he bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may avoid any judicial lien on exempt property, and any non-purchase-money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all the debtor's household goods as a means of obtaining payment.
>
> In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they

provide a credible basis for threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are forced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase-money security interests in household goods.

*In re Moyer,* 39 B.R. 211, 213 (Bankr.N.D.Ga. 1984) (*citing* H.R.Rep. No. 595, 95th Cong. 1st Sess. 127 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787).

**3.** Additional legislative history to 11 U.S.C. § 522(f) states that "when the Debtor filed a bankruptcy petition the secured party often used the threat of repossession, rarely carried out, to extract more than he would be able to get if he did a foreclosure or repossession. Section 522(f)(2)(A) was enacted to prevent such a secured creditor from exerting undue financial pressure based on chattels that had limited intrinsic value, but were essential to the Debtor." *In re Reid,* 121 B.R. 875, 877 (Bankr.D.N.M. 1990) (*citing* H.R.Rep. No. 595, 95th Cong. 1st Sess. 126–27 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787).

■ Based upon the foregoing, this Court finds that the facts in this case are not such that it is controlled by *Moreland.* Rather, it is controlled by footnote 1 of *Owen.* Accordingly, the Court further finds that debtor's Motion to Avoid Lien is not premature and is well taken. That motion is hereby granted.

**IT IS SO ORDERED.**