### In re Gary Leon SULLINS, Sharon Sullins, Debtors.

**Bankruptcy No. 3–90–04256.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 31, 1991.

Scott G. Stout, Dayton, Ohio, for debtors.

Steven C. Katchman, Dayton, Ohio, for General Credit Co.

George W. Ledford, Englewood, Ohio, trustee.

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding arises in a case referred to this court by the Standing Order Of Reference entered in this district on July 30, 1984, and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate, (K)—determinations as to the validity or extent or priority of liens, and (O)—other proceedings affecting the debtor—creditor relationship. The court is authorized to enter a final judgment and will do so.

The following constitutes the court's findings of fact and conclusions of law in accordance with Bankr.R. 7052; however, it should be noted that there was no testimony received from any witnesses in this case, nor were any documents admitted.

The evidence consists of the debtors' motion to avoid lien titled Motion To Avoid Lien Under 11 U.S.C. § 522(f) (Doc. 25) filed on July 3, 1991, and the Answer of General Credit Company of Ohio, Inc. To Avoid Debtors' Motion To Avoid Lien Under 11 U.S.C. § 522(f) (Doc. 26) filed July 9, 1991.

The parties, through counsel, agreed that the items that the debtors claimed to be exempt, would, in fact, fit within the provision of Ohio Revised Code § 2329.66 both as to their individual amounts and as to the total amount claimed. That is, the debtors' claimed exemptions would not exceed the total allowable exemption under Ohio law.

This issue presented in this proceeding was best summarized at the end of the colloquy between the court and counsel in the statement that, "but for the existence of the lien on these items of property, they would, in fact, be exempt property of the debtor."

This court recognizes that examining and relying on footnotes in Supreme Court decisions could represent inappropriate and undesirable activities by a trial court; however, in connection with the issues presented in this proceeding, such examination and reliance is an appropriate component of the court's total analysis. As a leading commentator observed, "[a]ll other American courts, state and federal, owe obedience to the decisions of the Supreme Court of the United States on questions of federal law, and a judgment of the Supreme Court provides the rule to be followed in all such courts until the Supreme Court sees fit to reexamine it." 1B *Moore's Federal Practice* para. o.402(1) (2d ed. 1991) (footnote omitted).

This principle, although in connection with a different issue, was recently applied by the bankruptcy court for the Middle District of Florida in *In re Jolly*, 124 B.R. 365 (Bankr.M.D.Fla.1991). The issue discussed in *Jolly* involved the standards for the burden of proof in dischargeability proceedings under § 523. In that case, the bankruptcy court in Florida acknowledged that the burden of proof to be applied was "preponderance of the evidence" and not "clear and convincing evidence" which was the standard announced by the Eleventh Circuit Court of Appeals. The Florida bankruptcy court recognized that *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) provides the law which must be followed, even though the circuit court governing the Florida bankruptcy court had not reversed or rescinded its decisions setting forth "clear and convincing evidence" as the applicable legal standard.

We turn to the recently decided Supreme Court case, *Owen v. Owen*, —— U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), which engenders the present controversy. Without dwelling on the facts of *Owen*, it essentially involved the application of the Florida homestead exemptions law to a parcel of real estate; however, the applicability of *Owen* is broader than its particular facts. Such an application of a Supreme Court decision is not uncommon, since it is the very mission of the Supreme Court to attempt to reconcile inconsistent or contrary decisions from various courts of appeals or other courts in the United States and to provide a uniform decision which will allow inferior courts to determine not

only factual issue identical to the facts in the Supreme Court decision, but through application of the principles extracted from the Supreme Court decision to determine similar controversies that would be governed by these principles.

*Owen* states that property which is properly exempted under § 522 is, with some exceptions not relevant here, immunized against liability for prebankruptcy debts. Further, § 522, which applies in all chapters including chapter 13, because it is a federal law, would, pursuant to the Supremacy Clause prevail over contrary state laws. *Owen* states, "[o]nly where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor." 111 S.Ct. at 1836. Additionally, it must be recognized that § 522(f) applies not only in § 522(f)(1) to judicial liens, but in § 522(f)(2) to a nonpossessory, nonpurchase-money security interest. The parties in this proceeding have agreed that the security interest in this case is a nonpossessory, nonpurchase-money security interest.

The controversy arises as a result of two prior Sixth Circuit decisions, *In re Pine*, 717 F.2d 281 (1983) and *In re Spears*, 744 F.2d 1225 (1984). This court believes that, under the analysis employed in *Owen*, these circuit decisions no longer control the resolution of motions pursuant to § 522(f). *See Owen*, 111 S.Ct. at 1836, n. 1. The *Spears* decision does correctly states the law of Ohio with regard to exemptions when it declares, "[u]nder Ohio Law a debtor may exempt only an interest in property that is not subject to any third party liens." *Spears* at 1225; O.R.C. § 2329.66. *Owen* states:

> The uniform practice of bankruptcy courts, however, is to the contrary. To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled but whether it impairs an exemption to which he *would have been* entitled, but for the lien itself.

*Owen*, 111 S.Ct. at 1836–37 (emphasis in original, footnote omitted). The text of *Owen* further notes that the avoidance powers under § 522(f) apply equally to motor vehicles, household goods, and tools of the trade.

> This reading must also be accepted, at least with respect to the federal exemptions, if § 522(f) is not to become an irrelevancy with respect to the most venerable, most common and most important exemptions. The federal exemptions for homestead (§ 522(d)(1)), for motor vehicles (§ 522(d)(2)), for household goods and wearing apparel (§ 522(d)(3)), and for tools of the trade (§ 522(d)(6)), are all defined by reference to the debtor's "interest" or "aggregate interest," so that if respondent's interpretation is accepted, no encumbrances of these could be avoided. Surely § 522(f) promises more than that—and surely it would be bizarre for the federal scheme to prevent the avoidance of liens on those items, but to permit it for the less crucial items (for example, an "unmatured life insurance contract owned by the debtor," § 522(d)(7)) that are not described in such fashion as unquestionably to exclude liens.

*Owen* at 1837.

In this court's perspective, the *Owen* decision cannot be restricted to Florida real estate exemption law but must be, consistent with the language used in the decision, applied to avoid liens in connection with household goods, wearing apparel, motor vehicles, tools of the trade, and other exemptions. As further clarification in its decision, *Owen* states:

> We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct. The question then becomes whether a different interpretation should be adopted for State exemptions. We do not see how that could be possible.

*Owen* at 1837–38 (footnote omitted).

As a result, this court believes it is not possible to treat state law, Ohio law con-

cerning exemptions, differently than the Supreme Court has required; and, accordingly, we believe that the Supreme Court's decision with regard to the lien avoidance provisions of 11 U.S.C. § 522(f)(1) and (2) permits debtors to avoid nonpurchase money, nonpossessory security agreements and that *Pine* and *Spears* no longer prevent this result.

We find further support for this conclusion in a recent decision from the Fourth Circuit Court of Appeals, *In re Opperman*, 943 F.2d 441 (4th Cir.1991).

In *Opperman*, the Fourth Circuit, following the analysis used by the Supreme Court in *Owen* and applying that analysis to North Carolina law, avoided a judicial lien which had attached to the debtor's residential property. The Fourth Circuit noted:

> [t]he [Supreme] Court emphasized the phrase "would have been entitled" found in section 522(f) indicating that an exemption to which the debtor would have been entitled includes either the federal or a state's exemptions. *Id.* The court posed the question whether "a different interpretation should be adopted for state exemptions." *Id.* The court answered that question in this way:

> > We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two exemptions differently. The provision ... refers to federal exemptions and state exemptions alike. Nor is there any overwhelmingly clear policy impelling us, if we possessed the power, to create a distinction which the words of the statute do not contain. *Id.*

It is clear to this court that the provision of N.C.Gen.Stat. § 1C–1604(a) limiting the homestead exemption to the duration of the debtor's actual residence in that place must not be applied in preference to the avoidance power of § 522(f). Such a lien may be avoided if it impairs the debtor's exemptions, either an actual exemption under the state statute or *the hypothetical federal exemption where*

*the state has opted out of the federal scheme.*

*Id.* (emphasis added).

It is clear to this court that, consistent with American legal principles, the Supreme Court's decision in *Owen* cannot be restricted to the factual presentation of Florida homestead exemption law, but rather, the principles enunciated in *Owen* are to be applied to grant or deny a debtor's motion to avoid liens and receive exemptions pursuant to any applicable federal or state law.

Additionally, the court notes a recent decision from the bankruptcy court in the Eastern District of Kentucky reported under the name *In re Conyers*, 129 B.R. 470 (Bankr.E.D.Ky.1991). *Conyers* states,

> In any event, the teaching of the *Owen* case is that the baseline against which impairment is measured is not an exemption to which the debtor "is entitled," but one to which the debtor "would have been entitled" but for the judicial lien in question. There is no doubt the debtor would be entitled to nearly the full amount of the allowable homestead exemption of $5,000.00 in this case but for the lien of Engle Realty, Inc. Accordingly, the lien is avoidable by the debtor. The avoidance of the lien passes the full interest of the debtor in the property to the estate and the debtor is permitted to claim his homestead exemption from property of the estate.

*In re Conyers* (quoting *Owen v. Owen*, — U.S. —, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)).

This court is persuaded that the Supreme Court's decision in *Owen* allows debtors to utilize the provision of 11 U.S.C. § 522(f) to avoid General Credit Company's nonpurchase-money, nonpossessory security interest in household goods.