**In re Ethelrine C. MORELAND, Debtor.**

**Bankruptcy No. 3–91–01711.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 10, 1992.

Scott G. Stout, Dayton, Ohio, for Ethelrine C. Moreland.

Stephen A. Santangelo, Columbus, Ohio, for Resolution Trust Corp.

George W. Ledford, Englewood, Ohio, Trustee.

DECISION ON ORDER GRANTING PLAINTIFF'S MOTION TO AVOID JUDICIAL LIEN UNDER 11 U.S.C. § 522(f)

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)—allowance or disallowance of exemptions from property of the estate, (K)—determinations as to the validity or extent or priority of liens, and (O)—other proceedings affecting the debtor-creditor relationship.

The initial pleading raising the issue for determination in this proceeding is the debtor's Motion To Avoid Judicial Lien Under 11 U.S.C. § 522(f) (Doc. 15–1).[1] Upon

---

1. In support of her motion, the debtor additionally filed a Memorandum In Support Of Debtor's Motion To Avoid Judicial Lien (Doc. 20–1). In response to the debtor's motion to avoid the judicial lien, Resolution Trust Corporation filed a Memorandum In Opposition To Debtor's Motion To Avoid Judicial Lien (Doc. 17–1).

A hearing was held and this matter was taken under advisement. Subsequently, a Supplemental Memorandum In Opposition To Debtor's Mo-

consideration of the debtor's motion, the parties' memoranda, and applicable case law, this court concludes, as set forth in this decision, that the judicial lien of Resolution Trust Corporation (Resolution) is avoidable.

## FACTS

The debtor, Ethelrine C. Moreland, filed for relief under chapter 13 of the Bankruptcy Code on April 5, 1991. The record in this case and the parties' memoranda establish the following relevant facts. The debtor's petition (Doc. 1–1) contains a supplemental schedule to exemption list B–4, which provides in part:

Debtors claim the following exemptions as marked, pursuant to the laws of the State of Ohio § 2329.66 Ohio Revised Code:

X Residential Real Estate (debtor) (A)(1) $5,000.00.

Pursuant to an order (Doc. 4–1), a meeting of creditors was held on May 14, 1991. No objection to the debtor's plan was filed, and on June 4, 1991 an Order Confirming Chapter 13 Plan (Doc. 11–1) was entered. No objection to the debtor's claimed exemptions was filed within thirty days following the meeting of creditors (11 U.S.C. § 522(*l*), Fed.R.Bankr. 4003(b)), nor has any such objection been filed as of the date of this decision.

The debtor's residence was appraised on April 23, 1991 at a fair market value of $22,000 (Doc. 5–1). A first mortgage on the debtor's residence is held by Federal National Mortgage Company (Interstate Mortgage) in the amount of $15,830.87 (Doc. 15–1). A second mortgage in the

amount of $2,126.78, held by General Credit Company, also encumbers the property (Doc. 15–1). Resolution has a judicial lien against the debtor's residence in the amount of $2,811.91 (Doc. 15–1). Neither party disputes that these values were the values as of the filing date. Therefore, the debtor has equity in her residence in the amount of $4,042.35. Accordingly, these uncontroverted facts constitute the court's findings of fact. *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 491–92 (Bankr. S.D.Ohio 1989).

## ISSUE

The issue presented is whether the debtor, pursuant to 11 U.S.C. § 522(f)(1), can avoid Resolution's judicial lien as an impairment of her exemption pursuant to O.R.C. § 2329.66(A)(1).[2]

## ANALYSIS

■ Before beginning an analysis of the relevant statutes and case law, the court notes that the United States Supreme Court has continually announced general principles governing the construction of provisions of the Bankruptcy Code. The principles may be briefly summarized by noting that, although canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, statutory interpretation is a holistic endeavor, which begins with the language of the statute itself, resorts to an examination of legislative history only to resolve statutory ambiguity, and does not produce a result demonstratively at odds with the purpose of the legislation. Examples of recent Supreme Court decisions interpreting the language of the Bankruptcy Code

---

tion To Avoid Judicial Lien (Doc. 23–1) was filed by Resolution Trust Corporation. Thereafter, the court entered an order (Doc. 24–1) fixing final dates for supplemental memoranda.

In response to the court's order, the debtor filed a Memorandum In Response To Resolution Trust Corporation's Supplemental Memorandum (Doc. 26–1) and Resolution Trust Corporation filed a Memorandum In Response To Court Order Of March 13, 1992 (Doc. 27–1). The debtor's subsequently filed motion (Doc. 29–1), seeking to incorporate the contents of a brief filed by another party in a separate case, was denied (Doc. 30–1).

**2.** The debtor's residence is valued at $22,000.00 subtracting the total of the first mortgage ($15,-830.87) and the second mortgage ($2,126.78), the debtor has equity in her residence in the amount of $4,042.35. The amount of the debtor's equity ($4,042.35) at the date of filing does not exceed the amount of the debtor's claimed exemption ($5,000.00). Accordingly, there is no amount to which Resolution's lien can attach without impairing the debtor's exemption. Thus, the entire amount of Resolution's judicial lien is subject to being avoided.

note, "[a]s Justice O'CONNOR explained last Term: " ' "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." ' " *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (citations omitted), and "[o]ur construction of the term 'debt' is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself." *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (citation omitted), and "[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* — U.S. —, —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted). More significant to this proceeding, the Supreme Court has recently decided three cases which directly address the issues of lien avoidance and exemption, *Farrey v. Sanderfoot,* — U.S. —, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), *Owen v. Owen,* — U.S. —, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), and *Taylor v. Freeland & Kronz,* — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). As required by the Supreme Court decisions, the analysis of the issue in this proceeding begins with the language of the statute itself.

Section 522(f)(1) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien

Section 522(b) sets forth the provisions governing exempt property. Section 522(b), in relevant part, provides:

Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection

specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place[.]

Under § 522(b), the debtor may choose exemptions as they are defined in § 522(d); or, the debtor may choose exemptions under applicable state exemption law. More specifically, pursuant to § 522(b)(1), each state may elect to "opt out" of the federal exemptions and allow its residents to only utilize state exemptions. Ohio has elected to opt out of the federal exemptions and limit its residents to exemptions pursuant to Ohio law.

Pursuant to O.R.C. § 2329.66(A)(1), Ohio residents are authorized to exempt from the bankruptcy estate an interest in a residence in an amount not to exceed $5,000. More specifically, the Ohio homestead exemption, O.R.C. § 2329.66(A)(1), provides:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(1) The person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence[.]

Although nothing in the language itself of § 522 would appear to prevent the avoidance of Resolution's judicial lien to the extent it impairs the debtor's exemption, Resolution's primary argument is that O.R.C. § 2329.66(A)(1), as interpreted by the Sixth Circuit, prevents the debtor's lien avoidance.

The Sixth Circuit interpreted the provisions of O.R.C. § 2329.66(A)(1) in *Ford Motor Credit Corp. v. Dixon (In re Dixon),* 885 F.2d 327 (6th Cir.1989). In *Dixon,* the Sixth Circuit addressed the issue of wheth-

er the debtors were entitled to avoid, pursuant to 11 U.S.C. § 522(f), the creditor's judicial lien encumbering the debtors' residence. The *Dixon* court held that, "Ohio, by opting out of the federal exemption, has limited the circumstances in which its homestead exemption is impaired, and as a result, a debtor is permitted to avoid a judicial lien pursuant to Section 522(f) only when the property affected by the exemption is subject to an 'execution, garnishment, attachment, or sale to satisfy a judgment or order.'" *Dixon*, 885 F.2d at 330. Consequently, the *Dixon* court concluded that, because the debtors' residence was "not subject to a judicial sale or other form of involuntary execution," the creditor's judicial lien could not be avoided.

Resolution asserts that the *Dixon* decision is binding and consequently, because none of the events in § 2329.66(A)(1) have occurred, the debtor's lien is not avoidable. The debtor asserts that the Supreme Court's recent decision in *Owen* requires a recognition that *Dixon* no longer controls the resolution of this issue.

The issue before the Supreme Court in *Owen* was whether the elimination of judicial liens under 11 U.S.C. § 522(f) "can operate when the State has defined the exempt property in such a way as specifically to exclude property encumbered by judicial liens." *Owen*, 111 S.Ct. at 1834. In *Owen*, the debtor's ex-wife obtained a judgment against the debtor for $160,000 in Sarasota County, Florida. At the time this judgment was obtained, the debtor did not own any property in Sarasota County; however, under Florida law the judgment would attach to any subsequently acquired property recorded in the county. Thereafter, the debtor acquired a condominium, which, upon acquisition of title, became subject to the judgment lien. One year later, Florida, an opt out state which requires that residents who file bankruptcy use Florida exemptions, amended its homestead law so that the debtor's condominium, which previously had not qualified as a homestead, thereafter did. The debtor filed bankruptcy and claimed a homestead exemption in the condominium. The debtor moved to avoid the lien pursuant to

§ 522(f)(1). The bankruptcy court refused to avoid the lien, and the district court affirmed, concluding that the lien attached before the property qualified for the exemption and that, therefore, Florida law did not exempt the lien encumbered property. The Eleventh Circuit Court of Appeals affirmed the lower courts.

The Supreme Court, reversing the lower courts, concluded that judicial liens can be avoided under § 522(f) even though the State has defined exempt property in such a way as to specifically exclude property encumbered by such liens. *Owen*, 111 S.Ct. at 1838. The Court found that such a definition of exempt property included a "built-in limitation" on state exemptions which, "in light of the equivalency of treatment accorded to federal and State exemptions by § 522(f)," was impermissible in § 522(f) proceedings. *Id.* Notably, the *Owen* Court stated:

Just as it is not inconsistent with the policy of permitting state-defined exemptions to have another policy disfavoring waiver of exemptions, whether federal- or state-created; so also it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created. *We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains.*

*Id.* (emphasis added).

In *Farrey*, the Supreme Court noted:
Congress enacted § 522(f) with the broad purpose of protecting the debtor's exempt property. See S.Rep. No. 95–989, p. 77 (1978); H.R.Rep. No. 95–595, *supra*, at 126–127. Ordinarily, liens and other secured interests survive bankruptcy. In particular, it was well settled when § 522(f) was enacted that valid liens obtained before bankruptcy could be enforced on exempt property, see *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 582–583, 55 S.Ct. 854, 859–860, 79 L.Ed. 1593 (1935), including otherwise exempt homestead property, *Long v. Bullard*, 117 U.S. 617,

620–621, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886). Congress generally preserved this principle when it comprehensively revised bankruptcy law with the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2587, 11 U.S.C. § 522(c)(2)(A)(i). But Congress also revised the law to permit the debtor to avoid the fixing of some liens. See, *e.g.,* 11 U.S.C. § 545 (statutory liens).

*Section 522(f)(1), by its terms, extends this protection to cases involving the fixing of judicial liens onto exempt property. What specific legislative history exists suggests that a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts.* As the House Report stated:

"The first right [§ 522(f)(1) ] allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions." H.R.Rep. No. 595, *supra,* at 126–127, U.S.Code Cong. & Admin.News 1978, pp. 6087–6088.

111 S.Ct. at 1829 (emphasis added).

Additionally, the Supreme Court has recently examined provisions of Section 522 as they relate to the procedures for claiming and objecting to exemptions. In *Taylor,* the Supreme Court stated:

When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate. See 11 U.S.C. § 541. The Code, however, allows the debtor to prevent the distribution of certain property by claiming it as exempt. Section 522(b) allowed Davis [the debtor] to choose the exemptions afforded by state law or the federal exemptions listed in § 522(d). Section 522(1) states the procedure for claiming exemptions and objecting to claimed exemptions as follows:

"The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt."

Although § 522(1) itself does not specify the time for objecting to a claimed exemption, Bankruptcy Rule 4003(b) provides in part:

"The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) ... unless, within such period, further time is granted by the court."

*... Taylor [the trustee], as a result, apparently could have made a valid objection under § 522(1) and Rule 4003 if he had acted promptly. We hold, however, that his failure to do so prevents him from challenging the validity of the exemption now.*

Taylor acknowledges that Rule 4003(b) establishes a 30–day period for objecting to exemptions and that § 522(1) states that "[u]nless a party in interest objects, the property claimed as exempt ... is exempt." He argues, nonetheless, that this failure to object does not preclude him from challenging the exemption at this time. In Taylor's view, § 522(1) and Rule 4003(b) serve only to narrow judicial inquiry into the validity of an exemption after 30 days, not to preclude judicial inquiry altogether. In particular, he maintains that courts may invalidate a claimed exemption after expiration of the 30–day period if the debtor did not have a good-faith or reasonably disputable basis for claiming it. In this case, Taylor asserts, Davis did not have a colorable basis for claiming all of the lawsuit proceeds as exempt and thus lacked good faith.

*Taylor justifies his interpretation of § 522(1) by arguing that requiring debtors to file claims in good faith will discourage them from claiming meritless exemptions merely in hopes that no one will object. Taylor does not stand alone in this reading of § 522(b).*

*Several Courts of Appeals have adopted the same position upon similar reasoning. See In re Peterson, 920 F.2d 1389, 1393–1394 (CA 8 1990); In re Dembs, 757 F.2d 777, 780 (CA 6 1985); In re Sherk, 918 F.2d 1170, 1174 (CA 5 1990). We reject Taylor's argument.*

. . . .

Taylor suggests that our holding will create improper incentives. He asserts that it will lead debtors to claim property exempt on the chance that the trustee and creditors, for whatever reason, will fail to object to the claimed exemption on time. He asserts that only a requirement of good faith can prevent what the Eighth Circuit has termed "exemption by declaration." *Peterson,* 920 F.2d at 1393. This concern, however, does not cause us to alter our interpretation of § 522(1).

... We have no authority to limit the application of § 522(1) to exemptions claimed in good faith.

112 S.Ct. at 1647–49 (emphasis added).

In this proceeding the appropriate resolution of the issue presented requires not only statutory interpretation analysis, but also consideration of the doctrine of *stare decisis.* More specifically, the consideration is whether, as a result of the Supreme Court's decisions in *Farrey, Owen,* and *Taylor,* the determination of the issue in this proceeding is controlled by *Dixon.*

"Time and time again, [the Supreme court] has recognized that the doctrine of *stare decisis* is of fundamental importance to the rule of law," as "[a]dherence to precedent promotes stability, predictability, and respect for judicial authority." °*Hilton v. South Carolina Public Rys. Comm'n,* — U.S. —, 112 S.Ct. 560, 563–64, 116 L.Ed.2d 560 (1991). All courts " 'owe obedience to the decisions of the Supreme Court of the United States on questions of federal law, and a judgment of the Supreme Court provides the rule to be followed in all such courts until the Supreme Court sees fit to reexamine it.' " *In re*

*Sullins,* 135 B.R. 288, 289 (Bankr.S.D.Ohio 1991) (quoting 1B *Moore's Federal Practice,* para. 0.402(1) at 12 (2d ed. 1991) (footnote omitted)).

In determining whether *Dixon* continues to control the determination of this issue, the court notes *In re Sullins,* 135 B.R. 288 (Bankr.S.D.Ohio 1991), a decision in which this court examined the doctrine of *stare decisis* in connection with *Owen* and the issue of whether a debtor could exempt property encumbered by nonpossessory, nonpurchase-money security interests. In *Sullins,* this court concluded that, in light of the Supreme Court's decision in *Owen,* the Sixth Circuit's decisions in *Spears v. Thorp Credit, Inc., (In re Spears),* 744 F.2d 1225 (6th Cir.1984) and *Giles v. Credithrift of America, Inc. (In re Pine),* 717 F.2d 281, 284 (6th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 183 (1984), are no longer controlling.[3] *Sullins,* 135 B.R. at 289. *Spears* and *Pine* held that, "[u]nder Ohio law, a debtor may exempt only an interest in property that is not subject to any third party liens." Applying the *Owen* rationale, this court stated, "it is not possible to treat state law, Ohio law concerning exemptions, differently than the Supreme Court has required; and, accordingly, we believe that the Supreme Court's decision [in *Owen* ] with regard to the lien avoidance provisions of 11 U.S.C. § 522(f)(1) and (2) permits debtors to avoid nonpurchase-money, nonpossessory security agreements and that *Pine* and *Spears* no longer prevent this result." *Id.* at 290–91. Although not addressing the doctrine of *stare decisis,* the bankruptcy court in *In re Puhl,* 136 B.R. 487, 488 (Bankr.N.D.Ohio 1992) also concluded that, in light of *Owen, Spears* and *Pine* were no longer controlling.

Other courts have also applied *Owen* to conclude that state opt out provisions limiting exemptions to unencumbered property could not preclude lien avoidance under § 522(f)(2). *See In re Wink,* 137 B.R. 297 (Bankr.W.D.Wis.1992) (court concluded

---

**3.** This court notes that *Pine* was disfavorably noted by the *Owen* Court in a footnote. *Owen,*

111 S.Ct. at 1836 n. 1.

that, although *Owen* specifically addressed the encumbrance of judicial liens on exempt property, the *Owen* rationale applied equally to nonpossessory, nonpurchase-money security interests, noting that any distinction was meaningless); *In re Kelly*, 133 B.R. 811, 813 (Bankr.N.D.Tex.1991) (creditor's lien in the debtor's household furnishings was avoidable. Notably, the court stated, "[c]entral to *Owen's* analysis is the following proposition: although a state may elect to control what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f) of the Code. The manner of applying § 522(f) is to be adopted under both the state and federal exemptions schemes."); *Shearer v. Crestar Bank (In re Shearer)*, 132 B.R. 313 (Bankr.W.D.Va. 1991) (Applying *Owen*, the court concluded that both subsections (f)(1) and (f)(2) of § 522 permit debtors to avoid liens on property that would have been exempt if not encumbered by a lien. The Virginia exemption statute gives purchase-money and nonpurchase-money security interests priority over the exemption for tools of trade). *See also In re Conyers*, 129 B.R. 470 (Bankr.E.D.Ky.1991).

The *Owen* rationale has additionally been applied to other issues. The *Owen* rationale was applied by the Fourth Circuit in analyzing a North Carolina exemption statute in *Wachovia Bank and Trust Co., N.A. v. Opperman (In re Opperman)*, 943 F.2d 441, 443 (4th Cir.1991). In *Opperman*, the debtor moved to avoid a judicial lien claiming that the lien impaired her homestead exemption under North Carolina law, an opt out state. Utilizing the *Owen* analysis, the *Opperman* court concluded that the North Carolina homestead exemption statute, which provides a homestead exemption for its residents, but limits this exemption to the duration of the debtor's actual residence on that property, "must not be applied in preference to the avoid-

ance power of section 522(f). Such a lien may be avoided if it impairs the debtor's exemption, either an actual exemption under the state statute or the hypothetical federal exemption where the state has opted out of the federal scheme." *Opperman*, 943 F.2d at 443. *See also McKeever v. McClandon (In re McKeever)*, 132 B.R. 996, 1003 (Bankr.N.D.Ill.1991) (The reasoning in *Owen* is applicable to the § 522(h) avoidance provisions. "When the Bankruptcy Code provides the debtor with an avoidance power, state law cannot negate that power by opting out of the federal exemptions and narrowly defining the debtors' state-created exemptions.").

Further, as the Supreme Court's most recent decision concerning Section 522 holds, the time limits set forth in the Bankruptcy Code and Rules establish the existing parameters for claiming or objecting to claimed exemptions, and even the Supreme Court does not possess the authority to limit the application of these congressionally created time limits (§ 522(*l*), Fed. R.Bankr.P. 3004(a); *Taylor*, 112 S.Ct. at 1648–49).

■ Under the *Owen* analysis, not only is "equivalency of treatment accorded to federal and State exemptions by § 522(f)," but a debtor's right to an exemption is determined at the time of filing, subject only to any timely filed objection.[4] At this statutorily defined, and Supreme Court reinforced, time, the debtor's federal right to receive an exemption is impermissibly defeated by any interpretation of the Ohio exemption statute which imposes a time constraint upon the debtor, i.e., a creditor's execution, garnishment, attachment, or sale, not contained in the provisions of the Bankruptcy Code. This time constraint in the Ohio exemption statute is a built-in limitation which negates a debtor's right to receive an exemption on the date the peti-

---

**4.** As the *Owen* Court noted, "[i]n the dissent's view, the question is whether the lien impairs an 'exemption to which the debtor would have been entitled at the time the lien "fixed."' Under the Code, however, the question is whether the lien impairs an 'exemption to which the debtor would have been entitled under subsec-

tion (b),' and under subsection (b), exempt property is determined 'on the date of the filing of the petition,' not when the lien fixed. 11 U.S.C. §§ 522(f), (b)(2)(A). We follow the language of the Code." *Owen*, 111 S.Ct. at 1838 n. 6 (emphasis added; citation omitted).

tion is filed, thus imposing an impermissible limitation upon a debtor's exemption and lien avoidance rights under § 522. The federal bankruptcy rights, contained in § 522(f), which belong to a debtor on the date the petition is filed, cannot be eliminated by a built-in state limitation, whether such elimination is by definition of the exemption, or by imposition of a time constraint. This elimination is contrary to specific provisions of the Bankruptcy Code (§ 522(f), § 522(b)(2)(A), § 522(*l*)).

As a result of the Supreme Court's decisions in *Farrey, Owen,* and *Taylor,* determining the meaning of § 522 in connection with a debtor's exemption and lien avoidance rights, all of which were decided several years after the *Dixon* decision was published and which obviously contain principles and analysis which were not available to the Sixth Circuit at the time of the *Dixon* decision, and because the analysis and holdings of these Supreme Court cases bind all federal courts, this court concludes that the resolution of the debtor's exemption and lien avoidance rights are no longer controlled by the *Dixon* decision.[5]

The court further notes that the Bankruptcy Code itself contains a provision which provides an opportunity to find an accommodation of the principles in *Owen* and of the principles in *Dixon.* Pursuant to 11 U.S.C. § 544(a)(2), upon the filing of a bankruptcy petition,[6] there is an execution upon all of the debtor's property. Section 544(a)(2) provides:

> (a) The trustee shall have, *as of the commencement of the case,* ... the rights and powers of ...
>
> (2) a creditor that extends credit to the debtor at the *time of the commencement of the case,* and obtains, *at such*

*time* and with respect to such credit, *an execution* against the debtor that is returned unsatisfied *at such time,* whether or not such a creditor exists[.]

(Emphasis supplied).

The Ohio statute and the *Dixon* interpretation of the statute mandate "that the Ohio homestead exemption is effective only upon an 'execution, garnishment, attachment or sale to satisfy a judgment order.'" *Dixon,* 885 F.2d at 330. In support of this determination, the *Dixon* court cited a decision from Ohio's highest court, the Ohio Supreme Court, interpreting O.R.C. § 2329.66, *Daugherty v. Central Trust Co.,* 28 Ohio St.3d 441, 504 N.E.2d 1100 (1986). *Daugherty* addressed the specific issue of whether a debtor's funds were exempt from a creditor bank's right of set off. The *Daugherty* court, applying the cardinal principle of statutory construction, held that, because the words "set off" were not specifically included within the statutory language of O.R.C. § 2329.66, which contained only the words "execution, garnishment, attachment, or sale," no right to an exemption from a bank's right of set off exists, and the court could not add the words "set off" to a statute when the legislature has not included such words.

Utilizing the same analysis set forth in *Daugherty,* it is reasonable to conclude that the "execution" set forth in § 544(a)(2) satisfies the express statutory language of O.R.C. § 2329.66. The Ohio Supreme Court's interpretation of O.R.C. § 2329.66, requiring an "execution, garnishment, attachment or sale," is consistent with the Ohio legislature's intention to make exemptions available to Ohio debtors. Under state law, an Ohio debtor has the right to use his property free from creditor inter-

---

**5.** The court is aware of the decisions *In re Bursee,* 142 B.R. 167 (Bankr.N.D.Ohio 1992) and *In re Falkenbach,* No. 3–91–04111, slip opinion (Bankr.S.D.Ohio April 30, 1992); however, neither of these decisions appears to have had the opportunity to consider the totality of the Supreme Court's decisions on exemption and lien avoidance. To the extent that these cases reach a conclusion that differs from the conclusion reached in this decision, this court respectfully declines to follow those decisions. Further, since this court's prior decision, *Allamon v.*

*Nichols (In re Allamon),* 122 B.R. 68 (Bankr. S.D.Ohio 1990), was decided before this court had the opportunity to consider the totality of these Supreme Court decisions, to the extent that *Allamon* reaches a conclusion that differs from the conclusion reached in this decision, this court will no longer follow *Allamon.*

**6.** As previously noted, the time at which the bankruptcy is filed is the time at which the debtor is entitled to an exemption.

ference. The only time at which a debtor would need statutory protection for his right to use his property is when an involuntary disposition is threatening, i.e., execution, garnishment, attachment, or sale; thus, the need for a state exemption law.

An entirely different set of rights and restrictions occur when a debtor files bankruptcy. A debtor who files for relief under the Bankruptcy Code loses the right to use his property at the time the petition is filed. This involuntary disposition occurs under operation of law (§ 541), is evidenced by an execution which occurs upon filing (§ 544(a)(2)), and is reinforced by other Code provisions (§ 362—prohibiting postpetition exercise of control over property of the estate, § 549—preventing postpetition transfers).

Finally, Resolution asserts that, under the Ohio exemption statute, because judicial lien holders will not receive any proceeds until the homeowner first receives the full value of the homestead exemption, there is never any impairment of the exemption by the lien and thus, "[t]he Ohio exemption statute renders the lien avoidance provisions of 11 U.S.C. § 522(f)(1) unnecessary and inappropriate." Resolutions's recitation of the effect of state law may be correct; however, this argument merely bolsters the necessity for application of the *Owen* reasoning with regard to the time exemptions are determined and lien avoidance is available under the federal Bankruptcy Code. Under Resolution's argument, § 522(f) becomes meaningless because, although a debtor may eventually receive the full amount of the allowable state exemption, a creditor, through a creditor's choice of the type of involuntary disposition, and at a time chosen by a creditor, determines the bankrupt debtor's exemptions and the availability of lien avoidance. The Code, however, requires that the date the petition is filed is the time when exemptions are fixed, and simultaneously, all judicial liens against the property are taken into account. Once a person files for bankruptcy relief, even though a state has opted out under § 522(b), the provisions of § 522(f) remain applicable. As the *Owen* Court stated, state law must not be applied in preference to the avoidance authority set forth in § 522(f).

The court concludes that the judicial lien held by Resolution, because it impairs the debtor's homestead exemption, is avoidable pursuant to § 522(f)(1).

To the extent the parties' pleadings present additional arguments in support of their respective positions, this court, as a result of this determination, finds it unnecessary to address them.

Accordingly, the debtor's Motion To Avoid Judicial Lien Under 11 U.S.C. § 522(f) (Doc. 15–1) is GRANTED and the judicial lien of Resolution Trust Corporation is avoided as of April 5, 1991, upon completion of the debtor's plan and the issuance of the debtor's discharge.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.